27929.00BU00/#412

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| POLYBRITE INTERNATIONAL, INC.,<br>an Illinois Corporation, | ) ) ) | |
| Plaintiff, | ) ) | No. 08 C 1797 |
| v. | ) ) | Hon. Robert W. Gettleman,<br>Judge Presiding |
| RICHARD BRENNER, an individual,<br>PAUL CHRISTENSEN, an individual, and<br>CHEE NGON WONG, an individual, | ) ) ) ) | Hon. Nan R. Nolan,<br>Magistrate Judge |
| Defendants. | ) ) ) | |

------------------------------------------------------------

| | |
|---|---|
| RICHARD BRENNER, | ) ) |
| Third-Party Plaintiff | ) ) |
| v. | ) ) |
| COMMERCIAL ELECTRIC, an Arkansas<br>limited liability company,<br>SOLID STATE SOLUTIONS, an Arkansas<br>limited liability company,<br>PHIL K. GAMACHE; BOB VAN AUKEN; and<br>WILLIAM YOUNG | ) ) ) ) ) ) ) |

## MOTION TO DISMISS THIRD-PARTY COMPLAINT

Comes now Third-Party Defendants Commercial Electric, LLC ("Commercial Electric"),

Solid State Solutions, LLC ("Solid State"), Phil K. Gamache ("Gamache"), Bob Van Auken

("Van Auken"), and William Young ("Young") (collectively, "Defendants"), by and through

their attorneys Rose Law Firm, a Professional Association, and for their Motion to Dismiss Third-Party Complaint, state as follows:

1.    On March 28, 2008, Plaintiff PolyBrite International ("PolyBrite") filed a complaint against Defendants Richard Brenner, Paul Christensen, and Chee Ngon Wong, three former employees of PolyBrite, alleging breach of fiduciary duty and conspiracy to breach fiduciary duty by forming and operating a competing company and improperly using PolyBrite's confidential and proprietary information while in PolyBrite's employ, and fraud and conspiracy to commit fraud by failing to disclose, in breach of their fiduciary duty, that they were forming a competing company while they were in PolyBrite's employ.  PolyBrite did not sue or assert any claims against Commercial Electric, Solid State, or any of their officers or employees.

2.    Defendant/Third-Party Plaintiff Richard Brenner ("Brenner") filed his Third-Party Complaint against Third-Party Defendants Commercial Electric, Solid State, Gamache, Van Auken, and Young on July 8, 2008, asserting claims based on contribution against all the third-party defendants, and for quasi-contractual indemnification against Commercial Electric and Solid State.

3.    Defendants Commercial Electric, Solid State, Van Auken, and Young were served with a summons and a copy of the Third-Party Complaint on July 9, 2008.  Defendant Gamache was served with a summons and a copy of the Third-Party Complaint on July 16, 2008. Contrary to the statement on the Summons, none of the Defendants were served with a copy of PolyBrite's complaint.

4.    The Third-Party Complaint should be dismissed against Defendants in accordance with Federal Rule of Civil Procedure 12(b)(2).  This Court lacks personal jurisdiction over the Defendants because none of them have sufficient minimum contacts with Illinois to subject them

to this Court's jurisdiction.  The Defendants' alleged contacts were not continuous and systematic such that they effectively became residents of Illinois, and Brenner's claims against them do not arise from or relate to the conduct that Brenner alleges serves as sufficient contact with Illinois.  Further, the fiduciary shield doctrine protects the individual third-party defendants from being subjected to the jurisdiction of this Court because any contact they allegedly had with Illinois was made solely on behalf of their employer, Commercial Electric.

5.      The Third-Party Complaint should be dismissed against Defendants in accordance with Federal Rule of Civil Procedure 12(b)(5).  Brenner's attempted service of process was insufficient as to all Defendants because a copy of the original PolyBrite complaint was not served on Defendants at the time they were served with the summonses.

6.      The Third-Party Complaint should be dismissed against Defendants in accordance with Federal Rule of Civil Procedure 12(b)(6).  The Third-Party Complaint fails to state a claim for contribution because such a claim is not available for underlying claims of breach of fiduciary duty and the intentional torts of fraud and conspiracy, nor is it available when seeking injunctive relief.  Furthermore, neither the Complaint nor the Third-Party Complaint alleges that these Defendants owed a duty to PolyBrite, which they did not.  Absent such a duty by the Third-Party Defendants to PolyBrite, the claims for contribution fail.  The Third-Party Complaint also fails to state a claim for quasi-contractual indemnification because PolyBrite asserted only intentional tort and non-tort claims against Brenner, and indemnification is not available for liability based on such claims.

7.      The fraud and conspiracy claims of the Third-Party Complaint should be dismissed against Defendants in accordance with Federal Rule of Civil Procedure 9(b).  The Third-Party Complaint fails to plead fraud with the level of particularity required by Rule 9(b).

3

The Third-Party Complaint also fails to allege any details of the alleged conspiracy, or the purpose of the conspiracy. The fraud and conspiracy claims are not described with sufficient detail to give the Defendants fair notice of the claims and the grounds upon which they rest, and the allegations do not raise above a speculative level the possibility that Brenner has a right to the relief he seeks.

8.      The Third-Party Complaint should be dismissed against Defendants in accordance with Federal Rule of Civil Procedure 14(c)(2). The Third-Party Complaint fails to state a claim for defense because neither the Third-Party Complaint nor the original PolyBrite complaint sounds in admiralty.

9.      Paragraphs 46-55 of the Third-Party Complaint should be stricken in accordance with Federal Rule of Civil Procedure 12(f). These paragraphs are irrelevant to Brenner's contribution and indemnification claims, and they are false as well as defamatory.

10.      This Motion is supported by the accompanying Brief in Support and the following Exhibits:

      Exhibit A:  Affidavit of Bob Van Auken

      Exhibit B:  Affidavit of William Young

      Exhibit C:  Affidavit of Phil Gamache

WHEREFORE, Third-Party Defendants Commercial Electric, LLC, Solid State Solutions, LLC, Phil K. Gamache, Bob Van Auken, and William Young respectfully request that this Court dismiss Third-Party Plaintiff Richard Brenner's Third-Party Complaint with prejudice, award them attorneys fees, costs, and expenses, and award them any and all other just and proper relief to which they may be entitled.

Respectfully submitted,

Amy Lee Stewart (Ark. Bar No. 88167)
Joi Leonard (Ark. Bar No. 2007228)
ROSE LAW FIRM
a Professional Association
120 East Fourth St.
Little Rock, AR  72201
Telephone:  (501) 375-9131
Facsimile:  (501) 375-1309
astewart@roselawfirm.com
jleonard@roselawfirm.com

WILLIAMS, MONTGOMERY & JOHN
20 North Wacker Drive, Suite 2100
Chicago, Illinois 60606-3094
Telephone: (312) 443-3200
Facsimile:  (312) 630-8540
tff@willmont.com
rmm@willmont.com


_/s/_Thomas Falkenberg_____
Thomas Falkenberg
Illinois Bar No.  6205289
R. Michael McCann
Illinois Bar No. 6275477

Counsel for:
Commercial Electric, LLC,
Solid State Solutions, LLC,
Phil K. Gamache,
Bob Van Auken, and
William Young

## CERTIFICATE OF SERVICE

I, Thomas Falkenberg, hereby certify that on this 29th day of July, 2008, I caused the foregoing **Motion To Dismiss Third-Party Complaint** to be filed electronically with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all ECF registered parties indicated below.  Parties may access this filing through the Court's CM/ECF system.

**Constantine John Gekas**
GEKAS & ASSOCIATES, LTD.
11 S. La Salle St., Ste. 1700
Chicago, IL  60603
Telephone:  (312) 726-4501
Facsimile:   (312) 726-4505
cjg@cjglaw.com

**Mark J. Rose**
LAW OFFICES OF MARK J. ROSE, ESQ.
200 W. Adams St., Ste. 2850
Chicago, IL  60606
Telephone:  (312) 704-1446
Facsimile:   (312) 704-8233
MJRoseEsq@aol.com

**William G. Sullivan**
**Mason N. Floyd**
MARTIN, BROWN & SULLIVAN
321 S. Plymouth Court, 10th Floor
Chicago, IL  60604
sullivan@mbslaw.com
floyd@mbslaw.com

**Sigi M. Offenbach**
PITLER & MANDEL
39 S. LaSalle St., Ste. 1220
Chicago, IL  60603
Telephone:  (312) 782-9466
sigi@pitlermandell.com


  _/s/_Thomas Falkenberg_____
   Thomas Falkenberg

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| POLYBRITE INTERNATIONAL, INC., an Illinois Corporation, | ) ) ) | No. 08 C 1797 |
| Plaintiff, | ) ) | Hon. Robert W. Gettleman, Judge Presiding |
| v. | ) ) | |
| RICHARD BRENNER, an individual, PAUL CHRISTENSEN, an individual, and CHEE NGON WONG, an individual, | ) ) ) ) | Hon. Nan R. Nolan, Magistrate Judge |
| Defendants | ) ) | |

-----------------------------------------------------------

| | |
|---|---|
| RICHARD BRENNER, | ) ) |
| Third Party Plaintiff | ) ) |
| v. | ) ) ) |
| COMMERCIAL ELECTRIC, an Arkansas limited liability company, SOLID STATE SOLUTIONS, an Arkansas limited liability company, PHIL K. GAMACHE; BOB VAN AUKEN; and WILLIAM YOUNG; | ) ) ) ) ) ) ) ) ) |

### <u>AFFIDAVIT OF BOB VAN AUKEN</u>

Comes now the undersigned and states as follows:

1.     My name is Bob Van Auken.  I am over the age of 18 years, of sound mind, and competent to give this Affidavit.  I am authorized and able to make the following statements based upon my personal knowledge.



2.    I live in Conway, Arkansas. I am currently employed as Executive Vice President of Commercial Electric, LLC, in Maumelle, Arkansas, where I have worked since June 2003.

3.    I have no personal contacts with Illinois.

4.    On April 19, 2007, Commercial Electric entered into a distribution agreement with PolyBrite International ("PolyBrite"). Neither Richard Brenner ("Brenner") nor any other individual was a party to that contract.

5.    Commercial Electric does not conduct business in Illinois on a regular basis, and it does not have an agent for service located in Illinois. Commercial Electric does not maintain an office or a bank account in Illinois, nor a mailing address or phone number in Illinois. Commercial Electric has no employees in Illinois.

6.    Last November, Ray Janik, a PolyBrite engineer, called Commercial Electric expressing his frustration with PolyBrite's poor financial situation and lack of attention to the linear LED light project Commercial Electric and PolyBrite were co-developing, and inquiring about the possibility of employment with Commercial Electric. Bill Young and I talked with him over the telephone and we agreed to come to Chicago to meet him for dinner to continue the discussion the next week, on November 14, 2007. We later scheduled a lunch meeting with Richard Brenner for that same day, intending to find out why PolyBrite was not making progress in producing the linear light and obtaining UL approval for it, and to ask about Ray Janik's capabilities at the same time. The November 14, 2007 lunch was not for the purpose of engaging Brenner as an employee or agent of Commercial Electric, nor was the topic even discussed at or before that meeting.

7.    The lunch meeting on November 14, 2007 was between Commercial Electric and Brenner. Phil Gamache ("Gamache"), Bill Young ("Young"), and I attended on behalf of

Commercial Electric. I attended the lunch meeting only on behalf of Commercial Electric and not out of any personal interest.

8.    At lunch, Brenner announced that he had been terminated from PolyBrite that morning. That was my first notice that Brenner would no longer be a PolyBrite employee. He explained that, at the request of several Board members, he had participated in a failed attempt to change the management and direction of PolyBrite. He also said that Ray Janik, following the failed reorganization attempt, had been given some increased corporate role. Brenner then suggested that he had some ideas, unspecified during the meeting, that might help Commercial Electric find another source for the linear light project. Brenner also told us that he had some experience with manufacturing in China. He said that none of the Chinese manufacturers PolyBrite had dealt with had done any work on the linear light project, however; all of that work had been done in the United States.

9.    I invited Brenner to Commercial Electric's office in Arkansas the following week so that we could hear his ideas for sourcing or production of the linear light.

10.    Leaving Brenner, we decided to have only a social dinner with Ray Janik and his wife. We spent the afternoon walking and shopping for souvenirs. Upon meeting for dinner that evening, Janik announced his new role at PolyBrite. We did not discuss any possible job opportunities with him then or at any later time.

11.    On November 20-21, Brenner traveled from his home in California to Commercial Electric's office in Maumelle, Arkansas to discuss options for sourcing or producing the linear light. Brenner advised us that Commercial Electric could have the linear light produced in China and that he could assist us with that process. During that meeting, Brenner mentioned for the first time a company called CDW Lighting, which he said had a small

line of high-quality LED lamps assembled by Wellstar, a contract manufacturer in China. Brenner said that he had no ownership role in CDW Lighting, and no conflict with PolyBrite. He brought out several samples of the CDW bulbs to show us Wellstar's capabilities. CDW did not have the linear light product Commercial Electric needed for Dillard's, and Wellstar had not previously designed or manufactured any such product.

12.     On November 28-29, 2007, Brenner returned from California to Arkansas to continue the discussions of the previous week. Paul Christensen, who had resigned from PolyBrite earlier that week, also attended. They subsequently accepted consulting engagements with Commercial Electric to assist it in the due diligence and establishment of Solid State Solutions, LLC.

13.     None of Brenner's or Christensen's work as a consultant for Commercial Electric or Solid State was intended to be, or to my knowledge was, performed in Illinois.

14.     Neither I, nor anyone else to my knowledge, has traveled to Chicago on behalf of Commercial Electric since November 14, 2007. Commercial Electric did not contract in Illinois with Brenner or anyone else to be its agent or employee at any time, including November 14, 2007.

FURTHER AFFIANT SAYETH NOT.

## VERIFICATION

STATE OF ARKANSAS   )
                               ) ss

COUNTY OF ~~PULASKI~~   )
          *Saline*

      I, Bob Van Auken, individually and as representative of Commercial Electric, LLC, state on oath that the statements set forth in the foregoing Affidavit are true and correct to the best of my knowledge and belief.

                                                    _____
                                                    Bob Van Auken, individually and as
                                                    Executive Vice-President of Commercial
                                                    Electric, LLC

SUBSCRIBED AND SWORN to before me, the undersigned and duly commissioned, qualified, and acting Notary Public within and for the County and State aforesaid, the _24_ day of July, 2008.



                                                    _____
                                                    Notary Public

                                                    My Commission Expires:

                                                    *08-23-2014*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

POLYBRITE INTERNATIONAL, INC.,           )
an Illinois Corporation,                 )
                                         )        No. 08 C 1797
          Plaintiff,                     )
                                         )        Hon. Robert W. Gettleman,
v.                                       )        Judge Presiding
                                         )
RICHARD BRENNER, an individual,          )        Hon. Nan R. Nolan,
PAUL CHRISTENSEN, an individual, and     )        Magistrate Judge
CHEE NGON WONG, an individual,           )
                                         )
          Defendants.                    )
                                         )
-----------------------------------------------------------

RICHARD BRENNER,                         )
                                         )
          Third Party Plaintiff          )
                                         )
v.                                       )
                                         )
COMMERCIAL ELECTRIC, an Arkansas         )
limited liability company,               )
SOLID STATE SOLUTIONS, an Arkansas       )
limited liability company,               )
PHIL K. GAMACHE; BOB VAN AUKEN; and      )
WILLIAM YOUNG;                           )

### AFFIDAVIT OF WILLIAM YOUNG

Comes now the undersigned and states as follows:

1.      My name is William Young.  I am over the age of 18 years, of sound mind, and

competent to give this Affidavit.  I am authorized and able to make the following statements

based upon my personal knowledge.

2.      I live in Little Rock, Arkansas.  I have been employed as a Vice President of

Commercial Electric, LLC in Maumelle, Arkansas since April 2007.



3.    I have no personal contacts with Illinois.

4.    On April 19, 2007, Commercial Electric entered into a distribution agreement with PolyBrite International, Inc. ("PolyBrite"). Neither Richard Brenner ("Brenner") nor any other individuals were parties to that contract. Under that agreement Commercial Electric purchased less than $7000 worth of product from PolyBrite, and was able to sell less than $800 worth (none in Illinois), for profit of less than $100.

5.    Last November, Ray Janik, a PolyBrite engineer, called Commercial Electric expressing his frustration with PolyBrite's poor financial situation and lack of attention to the linear LED light project Commercial Electric and PolyBrite were co-developing, and inquiring about the possibility of employment with Commercial Electric. Bob Van Auken and I talked with him over the telephone and we agreed to come to Chicago to meet him for dinner to continue the discussion the next week, on November 14, 2007. We later scheduled a lunch meeting with Richard Brenner for that same day, intending to find out why PolyBrite was not making progress in producing the linear light and obtaining UL approval for it, and to ask about Ray Janik's capabilities at the same time. The November 14, 2007 lunch was not for the purpose of engaging Brenner as an employee or agent of Commercial Electric, nor was the topic even discussed at or before that meeting.

6.    The lunch meeting on November 14, 2007 was between Commercial Electric and Brenner. Phil Gamache ("Gamache"), Bob Van Auken ("Van Auken"), and I attended on behalf of Commercial Electric. I attended the lunch meeting only on behalf of Commercial Electric and not out of any personal interest.

7.    At lunch, Brenner announced that he had been terminated from PolyBrite that morning. That was my first notice that Brenner would no longer be a PolyBrite employee. He

explained that, at the request of several Board members, he had participated in a failed attempt to change the management and direction of PolyBrite. He also said that Ray Janik, following the failed reorganization attempt, had been given some increased corporate role. Brenner then suggested that he had some ideas, unspecified during the meeting, that might help Commercial Electric find another source for the linear light project. Brenner also told us that he had some experience with manufacturing in China. He said that none of the Chinese manufacturers PolyBrite had dealt with had done any work on the linear light project, however; all of that work had been done in the United States.

8.    Bob Van Auken invited Brenner to Commercial Electric's office in Arkansas the following week so that we could hear his ideas for sourcing or production of the linear light.

9.    Leaving Brenner, we decided to have only a social dinner with Ray Janik and his wife. We spent the afternoon walking around and shopping for souvenirs. At dinner with Ray Janik and his wife that evening, we did not discuss any possible job opportunities with him.

10.    On November 20-21, Brenner traveled from his home in California to Commercial Electric's office in Maumelle, Arkansas to discuss options for sourcing or producing the linear light. Brenner advised us that Commercial Electric could have the linear light produced in China and that he could assist us with that process. During that meeting, Brenner mentioned for the first time a company called CDW Lighting, which he said had a small line of high-quality LED lamps assembled by Wellstar, a contract manufacturer in China. Brenner said that he had no ownership role in CDW Lighting, and no conflict with PolyBrite. He brought out several samples of the CDW bulbs to show us Wellstar's capabilities. CDW did not have the linear light product Commercial Electric needed for Dillard's, and Wellstar had not previously designed or manufactured any such product.

186404-1

11.     On November 28, 2007, Brenner returned from California to Arkansas to continue the discussions of the previous week. Paul Christensen, who had resigned from PolyBrite earlier that week, also attended. They subsequently accepted consulting engagements with Commercial Electric to assist us in the due diligence and establishment of Solid State Solutions, LLC.

12.     None of Brenner's or Christensen's work as a consultant for Commercial Electric or Solid State was intended to be, or to my knowledge was, performed in Illinois.

13.     Neither I, nor anyone else to my knowledge, has traveled to Chicago on behalf of Commercial Electric since November 14, 2007. Commercial Electric did not contract in Illinois with Brenner or anyone else to be its agent or employee at any time, including November 14, 2007.

FURTHER AFFIANT SAYETH NOT.

## VERIFICATION

**STATE OF ARKANSAS** )
                         ) ss
**COUNTY OF SALINE** )

      I, William Young, state on oath that the statements set forth in the foregoing Affidavit are true and correct to the best of my knowledge and belief.

William Young, individually and as
Vice President of Commercial Electric, LLC

SUBSCRIBED AND SWORN to before me, the undersigned and duly commissioned, qualified, and acting Notary Public within and for the County and State aforesaid, the 24 day of July, 2008.

Notary Public



My Commission Expires:

08-23-2014

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| POLYBRITE INTERNATIONAL, INC.,<br>an Illinois Corporation,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD BRENNER, an individual,<br>PAUL CHRISTENSEN, an individual, and<br>CHEE NGON WONG, an individual,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 08 C 1797<br><br>Hon. Robert W. Gettleman,<br>Judge Presiding<br><br>Hon. Nan R. Nolan,<br>Magistrate Judge |

-----------------------------------------------------------

| | |
|---|---|
| RICHARD BRENNER,<br><br>Third Party Plaintiff<br><br>v.<br><br>COMMERCIAL ELECTRIC, an Arkansas<br>limited liability company,<br>SOLID STATE SOLUTIONS, an Arkansas<br>limited liability company,<br>PHIL K. GAMACHE; BOB VAN AUKEN; and<br>WILLIAM YOUNG; | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### AFFIDAVIT OF PHIL GAMACHE

Comes now the undersigned and states as follows:

1.  My name is Phil Gamache.  I am over the age of 18 years, of sound mind, and competent to give this Affidavit.  I am authorized and able to make the following statements based upon my personal knowledge.

2.  I live in Little Rock, Arkansas.  I am employed as President and Manager of Commercial Electric, LLC in Maumelle, Arkansas.



EXHIBIT
C
tabbies

3.    I have no personal contacts with Illinois.

4.    On November 14, 2007, Bob Van Auken, Bill Young and I had lunch in Chicago with Dick Brenner. I attended the lunch meeting only on behalf of Commercial Electric and not out of any personal interest.

5.    We intended to ask Brenner to explain why PolyBrite was not making progress in producing and obtaining UL approval for the linear light we had co-developed with them to meet the particular need of our primary customer, Dillard's, and at the same time to inquire into the capabilities of Ray Janik, an engineer who had contacted Commercial Electric about possible employment. The November 14, 2007 lunch was not for the purpose of engaging Brenner as an employee or agent of Commercial Electric, nor was the topic even discussed at or before that meeting.

6.    Leaving Brenner, we decided to have only a social dinner with Ray Janik and his wife. We spent the afternoon walking around and shopping for souvenirs. At dinner with Ray Janik and his wife that evening, we did not discuss any possible job opportunities with him.

7.    On November 20-21, Brenner traveled from his home in California to Commercial Electric's office in Maumelle, Arkansas to discuss options for sourcing or producing the linear light. I attended some of the meeting with him in Maumelle. Brenner advised us that Commercial Electric could have the linear light produced in China and that he could assist us with that process. During that meeting, Brenner said he had a strong relationship with, although no ownership in, a company called CDW Lighting, which had a small line of high-quality LED lamps assembled by Wellstar, a contract manufacturer in China. He had brought with him several samples of the CDW bulbs to show us Wellstar's capabilities. CDW

did not have the linear light product Commercial Electric needed for Dillard's, and Wellstar had not previously designed or manufactured any such product.

8.      On November 28-29, 2007, Brenner returned from California to Arkansas to continue the discussions of the previous week.   Paul Christensen, who had resigned from PolyBrite earlier that week, also attended.  I did not attend much of that meeting.  Christensen and Brenner subsequently accepted consulting engagements with Commercial Electric to assist us in the due diligence and establishment of Solid State Solutions, LLC.

9.      None of Brenner's or Christensen's work as a consultant for Commercial Electric or Solid State was intended to be, or to my knowledge was, performed in Illinois.

10.      Neither I, nor anyone else to my knowledge, has traveled to Chicago on behalf of Commercial Electric since November 14, 2007.  Commercial Electric did not contract in Illinois with Brenner or anyone else to be its agent or employee at any time, including November 14, 2007.


FURTHER AFFIANT SAYETH NOT.

## VERIFICATION

STATE OF ARKANSAS    )
                     ) ss
COUNTY OF ~~PULASKI~~    )
         *Saline*

I, Phil Gamache, state on oath that the statements set forth in the foregoing Affidavit are true and correct to the best of my knowledge and belief.

_____
Phil Gamache

SUBSCRIBED AND SWORN to before me, the undersigned and duly commissioned, qualified, and acting Notary Public within and for the County and State aforesaid, the *24* day of July, 2008.



_____
Notary Public

My Commission Expires:

*08-23-2014*
_____

186406-1

27929.00BU00/#412

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | | |
|---|---|---|---|
| POLYBRITE INTERNATIONAL, INC.,<br>an Illinois Corporation, | ) | | |
| | ) | No. 08 C 1797 | |
| Plaintiff, | ) | | |
| | ) | Hon. Robert W. Gettleman, | |
| v. | ) | Judge Presiding | |
| | ) | | |
| RICHARD BRENNER, an individual, | ) | Hon. Nan R. Nolan, | |
| PAUL CHRISTENSEN, an individual, and | ) | Magistrate Judge | |
| CHEE NGON WONG, an individual, | ) | | |
| | ) | | |
| Defendants. | ) | | |
| | ) | | |
| ------------------------------------------------------------- | | | |
| RICHARD BRENNER, | ) | | |
| | ) | | |
| Third-Party Plaintiff | ) | | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| COMMERCIAL ELECTRIC, an Arkansas | ) | | |
| limited liability company, | ) | | |
| SOLID STATE SOLUTIONS, an Arkansas | ) | | |
| limited liability company, | ) | | |
| PHIL K. GAMACHE; BOB VAN AUKEN; and | ) | | |
| WILLIAM YOUNG; | ) | | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS THIRD-PARTY COMPLAINT

# **TABLE OF CONTENTS**

TABLE OF CASES ...........................................................................................iv

I. INTRODUCTION ..........................................................................................1

II. FACTUAL BACKGROUND ........................................................................2

III. DISCUSSION ..............................................................................................7

      A.     Brenner's Third-Party Complaint Should Be
            Dismissed for Lack of Personal Jurisdiction ......................................7

            1.     The Third-Party Complaint Does Not
                    Satisfy the Federal Due Process Requirements ......................8

                    a.     This Court Does Not Have General
                            Jurisdiction over the Defendants ......................9

                    b.     This Court Does Not Have Specific
                            Jurisdiction over the Defendants ....................11

            2.     The Third-Party Complaint Does Not
                      Satisfy the Illinois Due Process Requirements ....................13

      B.     Brenner's Third-Party Complaint Must
            Be Dismissed for Insufficient Service of Process.............................15

      C.     Brenner's Third-Party Complaint Must Be Dismissed for
            Failure to State a Claim on Which Relief Can Be Granted.................16

            1.     Brenner's Claim for Contribution Must Be Dismissed ...........17

            2.     Brenner's Claim for Indemnification Must Be Dismissed ......19

                      a.     Intentional Tortfeasors and Breachers of
                            Fiduciary Duty Are Not "Innocent Agents" ...................19

                    b.     Time Proves All Truths.......................................20

      D.     Brenner Fails to Plead Fraud and Conspiracy
            with Sufficient Particularity, and His Third-Party
            Claims Based on These Intentional Torts Should Be Dismissed .......21

            1.     Brenner's and PolyBrite's Allegations,
                    if Any, of Fraud Against Third-Party
                    Defendants Are Insufficient to State a Claim .........................22

            2.     Brenner's and PolyBrite's Allegations, if Any, of
                    Breach of Fiduciary Duty Against Third-Party
                    Defendants Are Insufficient to State a Claim .........................22

            3.     Brenner's and PolyBrite's Allegations,
                    if Any, of Conspiracy Against Third-Party
                  Defendants Are Insufficient to State a Claim .........................23

### TABLE OF CONTENTS (cont'd)

E.     The Court Should Strike Brenner's Allegations and Demands
       Under Fed. R. Civ. P. 14(c) Admiralty or Maritime Claims ..............................24

F.     The Court Should Strike Brenner's Paragraphs 46-55 Pursuant to Rule 12(f) .....25

IV. CONCLUSION  .............................................................................................................25

## TABLE OF CASES

*Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54 (1994)...................................................................17, 23

*Alpert v. Bertsch*, 235 Ill. App. 3d 452 (1992) ........................................................................14

*American Envtl., Inc. v. 3-J Co.*, 222 Ill. App. 3d 242 (1991) ..................................................17

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102 (1987).........................................9

*Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677 (7th Cir. 1992) .............................21

*Bauer v. Giannis*, 359 Ill. App. 3d 897 (2005) .........................................................................17

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .......................................................2, 22

*Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502 (7th Cir. 2007)............................21, 23

*Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12 (1998)..........................................24

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .............................................................11

*Burns & Assocs., Inc. v. Prestige Prods. Group, L.L.C.*, No. 00-C-2933, 2001 WL 830975 (N.D. Ill. July 20, 2001) ............................................................................................................11

*Byrton Dairy Prod. v. Harborside Refriger. Serv., Inc.*, 991 F. Supp. 977 (N.D. Ill. 1997).........19

*Cooper Linse Hallman Capital Mgmt. v. Hallman*, 368 Ill. App. 3d 353 (2006) .......................23

*Dames & Moore v. Baxter & Woodman*, 21 F. Supp. 2d 817 (N.D. Ill. 1998).....................22, 23

*David Co. v. Emerald Casino, Inc.*, No. 99-C-6822, 2003 WL 22113414 (N.D. Ill. Sept. 11, 2003).....................................................................................................................................24

*E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773 (7th Cir. 2007) ..................................22

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S. Ct. 1375, 47 L. Ed. 2d 668 (1976)...............17

*Foodcomm Int'l v. Barry*, 328 F.3d 300 (7th Cir. 2003).............................................................23

*Foodcomm Int'l v. Barry*, 463 F. Supp. 2d 818 (2006)..............................................................17

*Frazer v. A.F. Munsterman, Inc.*, 123 Ill. 2d 245 (1988)......................................................16, 19

*Gerill Corp. v. J.L. Hargrove Builders*, 128 Ill. 2d 179 (1989) ................................................17

*Healy v. CTP, Inc.*, No. 93-C-1727, 1995 WL 9203 (N.D.Ill. Jan 9, 1995) ..............................24

*Heinrich v. Peabody Int'l Corp.*, 99 Ill. 2d 344 (1984) .............................................................19

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)................................11

*Int'l Bus. Mach. Corp. v. Martin Prop. & Cas. Ins. Agency, Inc.*, 281 Ill. App. 3d 854 (1996)...14

*Int'l Shoe v. Washington*, 326 U.S. 310 (1945)..........................................................................9

**TABLE OF CASES (cont'd)**

*Jadom Furniture Co., Ltd. v. October Group Int'l*, No. 05-C-6077, 2007 WL 2359767 (N.D. Ill. Aug. 14, 2007) ........................................................................................................................19

*Kostal v. Pinkus Dermatopathology Lab., P.C.*, 357 Ill. App. 3d 381 (2005) .............................14

*Mayer v. Spanel Ltd.*, 51 F.3d 670 (7th Cir. 1995) ...................................................................17

*McClure v. Owens Corning Fiberglass Corp.*, 188 Ill. 2d 102 (1999)........................................17

*Michael J. Neuman & Assocs., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721 (7th Cir. 1994).......9

*Monke v. Gen. Med., P.C.*, No. 07-CV-198, 2008 WL 904734 (S.D. Ill. Mar. 31, 2008)............14

*Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69 (1982) ........................................................17

*Neptuno Treuhand-Und Verwaltungsgesellschaft MBH v. Arbor*, 295 Ill. App. 3d 567 (1998)...24

*Olinski v. Duce*, 155 Ill. App. 3d 441 (1987) ............................................................................9

*People ex rel Hartigan v. Cmty. Hosp. of Evanston*, 189 Ill. App. 3d 206 (1989).......................17

*Perkins v. Silverstein*, 939 F.2d 463 (7th Cir. 1991)..................................................................22

*Petrich v. MCY Music World, Inc.*, 371 Ill. App. 3d 332 (2007)................................................14

*Pinter v. Dahl*, 486 U.S. 622, 108 S. Ct. 2063, 100 L. Ed. 2d 658 (1988)..................................20

*Proctor & Schwartz, Inc. v. U.S. Equip. Co.*, 624 F.2d 771 (6th Cir. 1980)................................19

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773 (7th Cir. 2003)............7, 9, 11

*RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272 (7th Cir. 1997) ....................................7, 8, 9, 11

*Real Colors*, 974 F. Supp at 651 ...............................................................................................24

*Real Colors, Inc. v. Patel*, 974 F. Supp. 645 (N.D. Ill. 1997) ....................................................24

*Rollins v. Ellwood*, 141 Ill. 2d 244 (1990) ...............................................................................14

*St. Joseph Hosp. v. Corbetta Const. Co., Inc.*, 21 Ill. App. 3d 925 (1974)..................................19

*Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008).............................................................22

*Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968 (N.D. Ill. 2000) .........................24

*Trustees of Local Union No. 727 Pension Fund v. Perfect Parking, Inc.*, 126 F.R.D. 48 (N.D. Ill. 1989)...................................................................................................................................16

*Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918 (7th Cir. 1992) ............................................21

*Van Slambrouck v. Econ. Baler Co.*, 105 Ill. 2d 462 (1985)......................................................19

*Vasilj v. Duzich*, No. 07-C-5462, 2008 WL 2062371 (N.D. Ill. May 13, 2008) .........................14

*Venture Assoc. v. Zenith Data Systems*, 987 F.2d 429 (7th Cir. 1993)..........................................1

**TABLE OF CASES (cont'd)**

*Weiden v. Benveniste*, 298 Ill. App. 3d 531 (1998) .......................................................8

*Wieboldt Stores, Inc. v. Schottenstein*, 111 B.R. 162 (N.D. Ill. 1990).........................17

*Williams Elec. Games, Inc. v. Garrity*, 366 F.3d 569 (7th Cir. 2004) ..................17, 20

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).......................9, 11

# I. INTRODUCTION

On March 28, 2008, PolyBrite International, Inc. ("PolyBrite"), an Illinois vendor of a limited line of LED lighting products, sued its former employees Dick Brenner, CN Wong, and Paul Christensen in federal district court in Chicago, claiming that they each breached their fiduciary duties to PolyBrite, conspired together to breach their fiduciary duty by forming and operating a competing company while employed by PolyBrite, and allegedly improperly used PolyBrite's confidential and proprietary information to compete with PolyBrite.  PolyBrite also claims that the defendants defrauded PolyBrite by not reporting to PolyBrite their own and each other's alleged breaches of fiduciary duty.  *See* Plaintiff's Complaint and Exhibits.[1]  PolyBrite did not sue Commercial Electric, Solid State Solutions, or any of their officers or employees.

However, after the termination of his consulting engagement with Commercial Electric, Defendant Brenner filed a Third-Party Complaint against Commercial Electric, Solid State, and individuals William Young, Bob Van Auken, and Phil Gamache, seeking contribution pursuant to the Illinois Joint Tortfeasors Contribution Act, 740 ILCS § 100/1, *et seq.* (2008), for some or all of the claims  PolyBrite asserted against Brenner.   Brenner also seeks quasi-contractual indemnification from Commercial Electric and Solid State, apparently for actions he undertook as a consultant for those companies after November 30, 2007.

The Third-Party Complaint should be dismissed on multiple grounds, including lack of personal jurisdiction; protection for the individual third-party defendants under the "fiduciary shield doctrine"; insufficient service of process; failure to state a claim for contribution, which is not available for underlying claims of breach of fiduciary duty and the intentional torts of fraud and conspiracy, nor when the underlying complaint seeks injunctive relief; failure to allege a duty from these Defendants to PolyBrite, which is necessary for a contribution action; failure to state a claim for quasi-contractual indemnification, which is not available to one who is not himself wholly innocent; and failure to state a claim for defense under Federal Rule of Civil Procedure 14(c)(2), because neither the third-party nor the original complaint sounds in admiralty.  Further, paragraphs 46-55 of Brenner's Third-Party Complaint should be stricken because they are both irrelevant to his contribution and indemnification claims and because they are false and defamatory.

---

[1] The Court is entitled to rely on Plaintiff's Complaint and the exhibits thereto in resolving a motion to dismiss the Third-Party Complaint, which depends on and incorporates the underlying Complaint. *Venture Assoc. v. Zenith Data Systems*, 987 F.2d 429, 431 (7th Cir. 1993).

In the alternative, the Third-Party Complaint should be dismissed for failure to plead Brenner's claims sufficiently to put the third-party Defendants on notice of the claims against them and admit of the possibility that he might successfully support the claims, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007), and failure to plead either fraud or conspiracy with sufficient particularity.

## II. FACTUAL BACKGROUND

Commercial Electric is an Arkansas-based electrical solutions provider.  Its clients and contacts include Dillard's and Neiman Marcus, among others.  *See* Exhibit 17 to Plaintiff's Complaint.  On April 19, 2007, Commercial Electric became a distributor for PolyBrite International.  *See* Exhibit 13 to Plaintiff's Complaint.  PolyBrite's Distributor Agreement provides that PolyBrite sells products to the distributor, who maintains an inventory of the products to sell to the *distributor's* customers.  *Id.* at 3.2.2, 4.1, 5.0, 6.0, 8.1.   Although Commercial Electric had no success in selling PolyBrite's existing products, in mid-2007, it entered into a co-development project with PolyBrite on a specific LED lighting product (an OEM LED linear light for jewelry display cases) to meet a particular need of Commercial Electric's long-time customer, Dillard's, an Arkansas-based commercial retailer. *See* Exhibit 14 to Plaintiff's Complaint.  PolyBrite had no such LED linear light or LED type T-8 replacement[2] product available for jewelry display cases prior to Commercial Electric's identification of Dillard's need to PolyBrite.   Other suppliers have LED linear and T-8 replacement products, which Dillard's had been using.   Although Dillard's contemplated continuing to use those products, none had quite satisfied its requirements for color or brightness. *Id.*   As a result, Commercial Electric and PolyBrite decided to enter into a co-development project for the OEM LED linear light for jewelry display cases.

Working together, Commercial Electric and PolyBrite developed a prototype linear LED that Dillard's felt would work.  *Id.*  In August 2007, Dillard's gave Commercial Electric a verbal purchase order for an estimated 3000 linear feet of the lights per year for two years for jewelry display cases in Dillard's new store construction with the standard conditions that they be UL approved prior to delivery and that they be available for on-time installation at the end of the first quarter of 2008.  *Id.*  In the co-development process, PolyBrite was responsible for (1) moving from the rough prototype to a saleable unit with a fully developed manufacturing process and (2)

---

[2] The LED T-8 replacement is a substitute for a traditional one-inch diameter fluorescent tube.

getting the light through the UL safety certification process, per Occupational Safety and Health Administration (OSHA) requirements, into manufacturing in time to meet Dillard's delivery date. *Id*; *see also* Exhibits 16 and 17 to Plaintiff's Complaint.

By early November, PolyBrite had made no progress on either the approval or the manufacturing fronts. *See* Exhibits 16 and 17 to Plaintiff's Complaint. By letter dated November 9, 2007, to PolyBrite's President and CEO, Carl Scianna, Commercial Electric requested details and timelines for acquiring the UL approval and for meeting the production dates, and it warned PolyBrite that it would have the linear light produced itself rather than risk the business of its long-time customer, Dillard's, if PolyBrite could not complete the project as required. *See* Exhibit 18 to Plaintiff's Complaint. PolyBrite's response was wholly unsatisfactory and provided none of the requested detail or assurance. *See* Exhibit 19 to Plaintiff's Complaint. At about the same time, Commercial Electric received a call from a PolyBrite engineer, Ray Janik, expressing frustration with PolyBrite's lack of attention to the linear light project and inquiring whether Commercial Electric might have a place for him. Commercial Electric interviewed Janik over the phone and then arranged a dinner meeting with him in Chicago for November 14, 2007. They also scheduled lunch that same day with Dick Brenner to try to get a better sense of why the linear light was stalled at PolyBrite, and also of Janik's capabilities.

At the November 14 lunch, Brenner announced that he had been terminated from PolyBrite that morning, explaining that, at the request of several Board members, he had participated in a failed attempt to change the management and direction of PolyBrite. Brenner further mentioned that, in the aftermath of the failed "coup," Janik had just been given increased corporate responsibility at PolyBrite. *Id.* Responding to Commercial Electric's concerns about the lack of progress on the linear light, Brenner suggested, without offering any details, that he might be able to help Commercial Electric find another source for it, and he informed Commercial Electric that he had some experience with engineering and manufacturing in China. He said that none of the Chinese manufacturers PolyBrite worked with had done any work on the linear light; all of linear light work had been done in the United States. *Id.* In view of Janik's increased role at PolyBrite, Commercial Electric had only a social dinner with him and his wife that evening and did not discuss any possible job opportunity then or at any later time.

Commercial Electric did not receive any information and assurances as requested in the November 9 letter. Commercial Electric became increasingly concerned that, as a result of Brenner's termination, Commercial Electric's primary PolyBrite contact, Paul Christensen, now had no supervisor with knowledge of the linear light project and its issues. Accordingly, on November 16, Commercial Electric notified PolyBrite that it was terminating the co-development project and would seek other avenues to have the product developed, approved, and delivered. *See* Exhibit 20 to Plaintiff's Complaint.

On November 20-21, at Commercial Electric's invitation, Brenner traveled from his home in California to Commercial Electric's office in Maumelle, Arkansas, to discuss options for sourcing or producing the linear light. During that meeting, Brenner advised that he thought Commercial Electric could have the linear light engineered and manufactured in China and that he could assist Commercial Electric in that process. Brenner also mentioned, for the first time, a company called CDW Lighting that had a small line of high quality LED lamps assembled by Wellstar (a contract manufacturer in China), and Brenner stated that he had no ownership role in CDW Lighting. He brought several samples of the CDW lamps with him to show Commercial Electric Wellstar's capabilities. CDW did not have a linear light or T-8 product, nor had Wellstar previously designed or manufactured any such products.

Meanwhile, Paul Christensen, who, at the request of several Board members, had also apparently been involved in the failed PolyBrite management reorganization, was considering whether he would resign from PolyBrite in the wake of it. He decided over Thanksgiving week to resign effective November 26 and did so.

On November 28, Brenner and Christensen met in Maumelle with Commercial Electric to discuss various options for the production of a linear light for Dillard's. Both signed confidentiality agreements with Commercial Electric. Brenner showed Commercial Electric again, and Christensen for the first time, sample lamps Wellstar had assembled for CDW, although these did not include a linear light. Brenner and Christensen accepted consulting engagements to assist Commercial Electric in the due diligence and establishment of Solid State Solutions, LLC. *See* November 30, 2007 letter, attached as Exhibit to Third-Party Complaint. Brenner began organizing a trip to China to source a designer and factory for a linear light to meet Dillard's needs. He also arranged to introduce Commercial Electric to CN Wong, a Hong Kong citizen and employee of PolyBrite's Asian affiliate, who was dissatisfied at PolyBrite.

186765                                    4

Wong had indicated to Brenner that he might be interested in consulting with Commercial Electric as an interpreter and business consultant. Commercial Electric agreed to meet CN Wong in Hong Kong and evaluate him for that role.

On December 8-15, Brenner and Christensen traveled to Hong Kong and China along with Bob Van Auken and Bill Young, both of whom are employees of Commercial Electric. While there, Van Auken and Young met CN Wong, WN Wong (an owner of Wellstar Manufacturing), and Virgil Cheng (an independent electrical engineer) and visited VIGOR and Wellstar facilities, all as organized and arranged by Brenner. They did not visit or use PolyBrite's office or facilities in Hong Kong. Commercial Electric learned that, as a contract manufacturer, Wellstar had previously done some work for PolyBrite as well as CDW on several LED lamps, such as Par 38s and Par 30s. Commercial Electric in no way suggested or encouraged Wellstar to discontinue manufacturing for PolyBrite. It is now clear, however, that PolyBrite was looking for an alternate manufacturer as early as 2005, and again by August 2007—long before Commercial Electric became aware of Wellstar in late November 2007. *See* Exhibit 12 to Plaintiff's Complaint.

Commercial Electric asked Wellstar if it could design and manufacture a linear light that would perform the same function as the prototype that Commercial Electric and PolyBrite had co-developed and that would pass electrical safety testing. Wellstar promptly produced a prototype of a linear concept light with different tooling and technology. Among other differences, Wellstar's product was low voltage because high voltage would not be able to pass safety testing, and it was aluminum rather than stainless steel because aluminum is a better heat conductor. Commercial Electric asked if Wellstar could produce a prototype of an LED puck light, which Commercial Electric also needed for Dillard's. Wellstar did. Commercial Electric also asked if Wellstar could likewise produce a prototype LED T-8 replacement that Dillard's could use for replacement of fluorescent T-8s in its existing jewelry display cases. Wellstar did. To the best of Commercial Electric's knowledge, PolyBrite never worked on the development of a T-8 replacement or a puck light. *See* Exhibit 19 to Plaintiff's Complaint.

While in China, Brenner, Christensen, and Commercial Electric received letters from PolyBrite claiming that Brenner and Christensen signed confidentiality and non-compete agreements with PolyBrite and that it had learned that prior to their termination from PolyBrite, they had associated themselves with Commercial Electric and called on customers, vendors,

manufacturers, and employees of PolyBrite using PolyBrite's confidential and proprietary information. They also claimed to have information that PolyBrite had been defamed. PolyBrite charged that Commercial Electric could be liable for this "improper activity" as a violation of the Distributor Agreement between PolyBrite and Commercial Electric. PolyBrite demanded that the "improper activity" cease immediately, or it would immediately and aggressively pursue all remedies against Commercial Electric and all persons and entities involved and contact other necessary parties, including governmental agencies, accordingly. Having no knowledge of any such "improper activity," knowing that Brenner and Christensen began to work on Commercial Electric's behalf only after they left PolyBrite, and having been told by Brenner and Christensen that they recalled signing no such agreements with PolyBrite, Commercial Electric responded to PolyBrite's letter by requesting copies of the agreements with Brenner and Christensen and clarification and specification of the factual allegations. PolyBrite never sent any support for or details regarding its allegations.

Commercial Electric filed suit in Pulaski County Circuit Court for a declaratory judgment that the Confidentiality, Non-Compete Provision of the Authorized Distributor Agreement was overbroad and unenforceable and that Commercial Electric had not violated it, and it also sought an injunction prohibiting PolyBrite from threatening and interfering with Commercial Electric's consultants, employees, and customers. On April 7, following an agreed extension, and more than a week after PolyBrite filed the above-captioned litigation, PolyBrite answered Commercial Electric's Complaint with a general denial, delivered under a cover e-mail noting, "Based on my limited conversations with my client, I do not believe we intend to pursue this matter. It is my understanding that PolyBrite was upset with certain former employees and their dispute is not with Commercial Electric."

Meanwhile, unbeknownst to them, PolyBrite filed its Complaint in this case against Defendants Brenner, Christensen, and CN Wong on March 28, 2008, and obtained a temporary restraining order on April 4, 2008. By agreement of the original Plaintiff and Defendants, this Court converted the TRO into a Preliminary Injunction in mid-April. The Preliminary Injunction prohibited the named defendants and anyone acting in concert with them from soliciting LED or solid state lighting business from PolyBrite customers or potential customers that the defendants knew PolyBrite or its agents or distributors had made presentations to regarding PolyBrite LED or solid state lighting products. During April, PolyBrite and the defendants engaged in expedited

186765                                                      6

discovery under a strict confidentiality agreement that limited access to discovery only to the original parties and their counsel. The discovery included depositions of Brenner, Christensen, and six key PolyBrite officers and employees. Consistent with the fact that Commercial Electric and Solid State had not engaged in any improper activity with the defendants and consistent with PolyBrite's counsel's April 7 cover e-mail to with PolyBrite's Answer, PolyBrite did **not** sue Commercial Electric, Solid State, its officers or employees.

Solid State moved forward with Wellstar and development of the puck light, linear light, and T-8, and engaged CN Wong, who tendered his resignation to PolyBrite in mid-December, as a consultant. Wellstar assured Solid State and Commercial Electric that no products it engineered for them would in any manner infringe on the intellectual property of any other entity. None of the third-party Defendants are affiliated in any way with CDW, and none purchase products by or through CDW or are otherwise doing business with CDW.

After Commercial Electric terminated Brenner's consulting services in June 2008, he alleged a right to contribution or indemnification from Commercial Electric, Solid State Solutions, Gamache, Van Auken, and Young. The Third-Party Complaint followed.

### III. DISCUSSION

**A.    Brenner's Third-Party Complaint Should Be Dismissed for Lack of Personal Jurisdiction**

When a defendant moves to dismiss a complaint based on Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a prima facie case for jurisdiction over a nonresident defendant. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Once the defendant has submitted affidavits or other evidence in support of its motion to dismiss for lack of jurisdiction, the plaintiff must go beyond the allegations in the pleadings and submit affirmative evidence that supports the exercise of jurisdiction over the defendant. *Id.* at 782-83. A federal court sitting in Illinois and acting under diversity jurisdiction must rely on Illinois state law of personal jurisdiction, and the exercise of personal jurisdiction over a defendant must satisfy three components: (1) the Illinois long-arm statute, (2) the Illinois constitution, and (3) the federal constitution. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275-76 (7th Cir. 1997). The Illinois long-arm statute is coextensive with the requirements of due process under the federal constitution, and thus, the jurisdiction analysis

collapses into two inquiries: federal due process requirements and Illinois due process requirements. *Weiden v. Benveniste*, 298 Ill. App. 3d 531, 533 (1998); *RAR, Inc.*, 107 F.3d at 1276.

In the present case, Brenner fails to establish a prima facie case for jurisdiction over the third-party Defendants. Brenner's Third-Party Complaint states two bases for jurisdiction: (1) the distributor agreement between PolyBrite and Commercial Electric and (2) a meeting in Illinois on November 14, 2007 between Brenner and the individual Defendants, acting on behalf of Commercial Electric. Neither of these supports the exercise of personal jurisdiction over any of the Defendants because the federal and state due process requirements are not satisfied in this case due to the lack of either general or specific jurisdiction over the third-party Defendants. This Court does not have general jurisdiction over any of the third-party Defendants because neither the distributor agreement—to which Brenner was not a party—nor the November 14, 2007 meeting rise to the level of continuous and systematic contacts. Likewise, this Court lacks specific jurisdiction over the third-party Defendants because Brenner's claims do not arise from or relate to the distributor agreement or the November 14, 2007 meeting, which was not for the purpose of engaging Brenner as a Commercial Electric employee. Brenner's Third-Party Complaint also fails to satisfy the due process requirements of the Illinois Constitution because it would be unfair, unjust, and unreasonable to require the third-party Defendants to litigate in Illinois when they have few, if any, contacts with that state. Additionally, the fiduciary shield doctrine under Illinois law protects the individual third-party Defendants from being subject to this Court's jurisdiction because the actions that Brenner alleges they engaged in were taken solely on behalf of their employer, Commercial Electric, and not to serve their own personal interests. Accordingly, Brenner's Third-Party Complaint should be dismissed for lack of personal jurisdiction.

1.    **The Third-Party Complaint Does Not Satisfy the Federal Due Process Requirements**

In assessing whether the exercise of personal jurisdiction over a defendant satisfies the due process requirements of the federal constitution, a court considers whether the defendant had sufficient minimum contacts with the forum state such that requiring the defendant to litigate in the forum does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe v.*

186765                                                      8

*Washington*, 326 U.S. 310, 316 (1945).  The defendant's minimum contacts must be significant enough to create a substantial connection between the defendant and the forum state.  *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1987).  The precise meaning of the minimum contacts standard varies depending on whether the plaintiff seeks to have the court assert general or specific jurisdiction over the defendant.  *RAR, Inc.*, 107 F.3d at 1277.  Although a nonresident's conduct might subject him to liability in the forum, that conduct does not automatically permit the exercise of personal jurisdiction over that defendant.  *Olinski v. Duce*, 155 Ill. App. 3d 441, 444 (1987).

> **a.**      ***This Court Does Not Have General Jurisdiction over the Defendants***

A defendant subject to the general jurisdiction of a court may be sued in the forum regardless of the suit's relation to the defendant's specific contacts with the forum.  *Purdue Research Found.*, 338 F.3d at 787.  The standard for the minimum contacts required for general jurisdiction is, however, "considerably more stringent" than that for specific jurisdiction.  *Id.*  A court has general jurisdiction only if the defendant has continuous and systematic business contacts with the forum.  *Id.*  The defendant must operate within the forum state "not occasionally or casually, but with a fair measure of permanence and continuity" such that the defendant has, in effect, taken up residence in the forum.  *Michael J. Neuman & Assocs., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir. 1994).  In determining whether general jurisdiction exists, courts consider the extent to which the defendant conducts business in the forum state, whether the defendant maintains an office in the forum state, whether the defendant sends employees into the forum state to conduct business, whether the defendant solicits business in the forum state, and whether the defendant has designated an agent for service of process in the forum state.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980).

In the present case, there is no general personal jurisdiction over Commercial Electric.  The Third-Party Complaint suggests that Commercial Electric is subject to this Court's jurisdiction because it has been transacting business in Illinois pursuant to an April 2007 distributor agreement with PolyBrite; however, that is both incorrect and wholly irrelevant to Brenner's alleged causes of action against Commercial Electric.  Brenner was not a party to the distributor agreement, and jurisdiction cannot be established over Commercial Electric merely because it executed an agreement with another party in Illinois.  *See* Affidavit of Bob Van Auken, ¶ 4, attached to Motion to Dismiss Third-Party Complaint as Exhibit A ("Van Auken

Affidavit"); Affidavit of William Young, ¶ 4, attached to Motion to Dismiss Third-Party Complaint as Exhibit B ("Young Affidavit"). Further, under that agreement, Commercial Electric purchased less than $7,500 worth of product from PolyBrite, and it was able to sell less than $800 worth—none of which was in Illinois—for a profit of less than $100. *See* Young Affidavit, ¶ 4. Commercial Electric neither conducts business in Illinois on a regular basis nor has an agent for service in Illinois. Van Auken Affidavit, ¶ 5. Commercial Electric does not maintain an office, bank account, or employees in Illinois, and it has never had an Illinois mailing address or phone number. *Id.* In short, Commercial Electric does not continuously and systematically conduct business in Illinois such that it has effectively become a resident of Illinois. Therefore, because the only alleged basis for general personal jurisdiction over Commercial Electric is its agreement with PolyBrite, which is not the subject of either the underlying lawsuit or Brenner's Third-Party Complaint, no general personal jurisdiction exists over Commercial Electric.[3]

With respect to Solid State, Brenner fails to allege *any* contact between Solid State and Illinois. Solid State has had no contact with PolyBrite, and as Brenner recognizes in this Third-Party Complaint at paragraph 30, Solid State did not even exist as of the meeting on November 14, 2007. All actions allegedly taken by Solid State occurred outside of Illinois. Therefore, no general personal jurisdiction exists over Solid State.

Similarly, Brenner does not appear to assert any bases for general jurisdiction over the individual Defendants, and he could not appropriately do so. None of the individual Defendants has sufficient minimum contacts with Illinois. They have had no individual, personal contact with Illinois that would rise to the level of continuous and systematic contact. *See* Van Auken Affidavit, ¶ 3; Young Affidavit, ¶ 3; Affidavit of Phil Gamache, ¶ 3, attached to Motion to Dismiss Third-Party Complaint as Exhibit C ("Gamache Affidavit"). Clearly, their actions in traveling to Chicago solely on behalf of their employer and having one lunch with Brenner, a

---

[3] Even if Brenner's Third-Party Complaint can be read to assert general jurisdiction over the Defendants based on the November 14, 2007 meeting, that alleged action does not rise to the level of continuous and systematic because (1) the purpose of the meeting was not to engage Brenner as a Commercial Electric employee, and he was not engaged as such at that meeting or any other time in Illinois, and (2) Brenner was and is a resident of California, not Illinois, and thus, the meeting cannot be considered to be a contact with Illinois in any respect.

California resident,[4] are insufficient to subject them to the jurisdiction of this Court to defend against this California resident's third-party complaint.[5]    Therefore, there is no general jurisdiction over the individual Defendants.

> ### b.    *This Court Does Not Have Specific Jurisdiction over the Defendants*

In contrast to general jurisdiction, a court may exercise specific jurisdiction over a defendant only if the lawsuit arises out of or is related to the defendant's contacts with the forum state.  *RAR, Inc.*, 107 F.3d at 1277 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).  The basic inquiry focuses on "whether it is fundamentally fair to require the defendant to submit to the jurisdiction of the court *with respect to this litigation*." *Purdue Research Found.*, 338 F.3d at 780 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)) (emphasis in original).  In other words, the focus is on foreseeability—whether the defendant could anticipate being haled into court in the forum state with respect to the matter at issue.  *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).  A court does not have specific jurisdiction merely because the plaintiff's claims arose out of the *general* relationship between the parties.  *RAR, Inc.*, 107 F.3d at 1278.  "[T]he action must *directly arise* out of the *specific* contacts between the defendant and the forum state." *Id.* (emphasis supplied).  A nonresident defendant is not subject to personal jurisdiction simply by entering into a contract with a resident of the forum state.  *Burger King Corp.*, 471 U.S. at 478.  Further, plaintiffs cannot seek "to base jurisdiction on one, isolated occurrence and whatever inferences can be drawn therefrom." *World-Wide Volkswagen Corp.*, 444 U.S. at 295.  When the only basis for jurisdiction over a defendant is that the defendant transacted business pursuant to an agreement that gave rise to a lawsuit, which, in turn, gave rise to a third-party complaint against a defendant, it would be unfair to force that defendant to defend the third-party complaint in the forum selected for the underlying lawsuit.  *Burns & Assocs., Inc. v. Prestige Prods. Group, L.L.C.*, No. 00-C-2933, 2001 WL 830975, *3 (N.D. Ill. July 20, 2001).

In the instant case, Commercial Electric lacks sufficient minimum contacts with Illinois with respect to the allegations in Brenner's complaint.  The Third-Party Complaint suggests that

---

[4] Although Brenner was in Illinois on November 14, 2007, and until then was employed by an Illinois company, he was, and is, a resident of California.  Plaintiff's Complaint, ¶ 7.

[5] See section III.A.1.b.  Because Brenner's Third-Party Complaint fails to meet the requirements for establishing specific jurisdiction over the individual Defendants, Brenner's Complaint cannot meet the higher standard required for asserting general jurisdiction over them based on the same alleged contacts

Commercial Electric is subject to this Court's jurisdiction because it has been transacting business in Illinois pursuant to an April 2007 distributor agreement with PolyBrite; however, that is both incorrect and wholly irrelevant to Brenner's alleged causes of action against Commercial Electric.  Brenner was not a party to the distributor agreement, and his claims in no way arise out of Commercial Electric's relationship with PolyBrite.  *See* Van Auken Affidavit, ¶ 4; Young Affidavit, ¶ 4.

Similarly, Brenner's claims against Commercial Electric do not arise out of the November 14, 2007 meeting in Chicago as alleged because that meeting was **not** scheduled for the purpose of engaging Brenner to work with Commercial Electric, and in fact, he was not engaged at that meeting.  *See* Van Auken Affidavit, ¶ 6; Young Affidavit, ¶ 5; Gamache Affidavit, ¶ 5.  In addition, at the time of that meeting, Brenner was no longer a PolyBrite employee, and PolyBrite's claims against Brenner are based on Brenner's creation and concealment of an alleged competing company (CDW Lighting Technologies) while still an employee of PolyBrite.  Moreover, Brenner was not an Illinois resident at the time of the November 14, 2007 meeting or at the time he worked as a consultant for Commercial Electric; thus, the meeting Brenner cited in his Complaint was not even between Commercial Electric and an Illinois resident and, therefore, could not be considered a contact with Illinois.  In short, Brenner's claims against Commercial Electric do not directly arise from any alleged contact with Illinois, and thus, no specific personal jurisdiction exists over Commercial Electric.

With respect to Solid State, as stated previously, Brenner fails to allege *any* contact with Illinois.  Solid State has had no contact with PolyBrite, and as Brenner recognized in his Third-Party Complaint at paragraph 30, Solid State had not even been formed as of the November 14, 2007 meeting.  All actions allegedly taken by Solid State occurred outside of Illinois.  Thus, Brenner has not demonstrated that Solid State had sufficient contacts with Illinois such that it could reasonably anticipate being haled into court there, and therefore, this Court has no personal jurisdiction over it.

Brenner's complaint against the individual Defendants also fails to allege sufficient facts to demonstrate that this Court can exercise personal jurisdiction over them.  None of the individual Defendants has sufficient minimum contacts with Illinois.  They have no individual relationship with PolyBrite or Illinois.  *See* Van Auken Affidavit, ¶ 3; Young Affidavit, ¶ 3; Gamache Affidavit, ¶ 3.  Although they had lunch with Brenner on November 14, 2007, they did

so only on behalf of Commercial Electric and only for the purposes of (1) seeking information as to the reasons why PolyBrite was not progressing with the co-development of the linear light and (2) getting a reference on Ray Janik, who had contacted Commercial Electric to express his frustration with PolyBrite's poor financial situation and lack of attention to the co-development project, and consequently, to inquire about the possibility of a position for him at Commercial Electric. *See* Van Auken Affidavit, ¶ 6; Young Affidavit, ¶ 5; Gamache Affidavit, ¶ 5. The individual Defendants were *not* meeting with Brenner to engage him as an employee for Commercial Electric, and they did not engage him then, or at any other time, in Illinois. *See* Van Auken Affidavit, ¶¶ 6, 14; Young Affidavit, ¶¶ 5, 13; Gamache Affidavit, ¶¶ 5, 10. Rather, Brenner announced at the luncheon that he had been fired from PolyBrite that morning, that Janik had been promoted within PolyBrite, and that Brenner had some unspecified ideas that might help Commercial Electric move the linear light product along. *See* Van Auken Affidavit, ¶ 8; Young Affidavit, ¶ 7.

Van Auken invited Brenner to Commercial Electric's office in Arkansas the next week to discuss his ideas, and that meeting took place in Arkansas on November 20-21, 2007. *See* Van Auken Affidavit, ¶ 9; Young Affidavit, ¶ 8. Brenner returned to Arkansas on November 28, and at that time, Commercial Electric engaged his services, as evidenced by the letter attached to Brenner's Third-Party Complaint. *See* Van Auken Affidavit, ¶ 12; Young Affidavit, ¶ 11; Gamache Affidavit, ¶ 8. None of the individual Defendants traveled to Chicago on behalf of Commercial Electric after November, 14, 2007. *See* Van Auken Affidavit, ¶ 14; Young Affidavit, ¶ 13; Gamache Affidavit, ¶ 10. Thus, the November 14 lunch in Chicago with Brenner, a California resident, fails to support his claim of specific personal jurisdiction over the third-party Defendants in an Illinois court. It is one, isolated occurrence from which he asks the Court to draw broad, unfounded inferences. Simply put, none of Brenner's claims against the individual Defendants directly arise out of their lunch with him in Chicago. Thus, there is no specific personal jurisdiction over the individual Defendants.

## 2.    The Third-Party Complaint Does Not Satisfy the Illinois Due Process Requirements

The exercise of personal jurisdiction over a nonresident defendant satisfies the requirements of the due process clause of the Illinois Constitution if it is fair, just, and reasonable

to require that defendant to defend the action in Illinois, taking into account the quality and nature of the defendant's acts in Illinois. *Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990). Exercising jurisdiction over an employee who acts only in the interests of his employer may satisfy federal due process, but it does not satisfy the requirements of due process under the Illinois Constitution, which imposes a stricter standard. *Monke v. Gen. Med., P.C.*, No. 07-CV-198, 2008 WL 904734, *5 (S.D. Ill. Mar. 31, 2008). Thus, even if a corporation is subject to the personal jurisdiction of a court, that fact alone does not mean that a nonresident employee or stockholder is subject to jurisdiction. *Petrich v. MCY Music World, Inc.*, 371 Ill. App. 3d 332, 344 (2007).

In addition, the Illinois Supreme Court has recognized and applied the "fiduciary shield doctrine":

> [W]e find it to be unfair and unreasonable, under Illinois' due process clause and the tenets of our concept of the jurisdictional power of the Illinois courts, to assert personal jurisdiction over an individual who seeks the protection and benefits of Illinois law, not to serve his personal interests, but to serve those of his employer or principal.

*Rollins*, 141 Ill. 2d at 280. Although some Illinois federal courts have found that the fiduciary shield doctrine does not apply when the defendant is a high-ranking company officer or shareholder, such a finding is not supported by Illinois case law.[6] *Compare Vasilj v. Duzich*, No. 07-C-5462, 2008 WL 2062371, *5-6 (N.D. Ill. May 13, 2008) *with Alpert v. Bertsch*, 235 Ill. App. 3d 452 (1992) (holding that the fiduciary shield doctrine protects an employee, shareholder, or officer of a foreign corporation from being subjected to the jurisdiction of an Illinois court when the individual defendant acted only on behalf of the corporation). Illinois courts make it clear that, absent other conditions, the fiduciary shield doctrine applies unless the individual defendant is an employee, officer, or shareholder of an *Illinois* corporation. *See, e.g., Alpert*, 235 Ill. App. 3d at 461-62; *Int'l Bus. Mach. Corp. v. Martin Prop. & Cas. Ins. Agency, Inc.*, 281 Ill. App. 3d 854, 858-62 (1996), *superseded by statute on other grounds as stated in Kostal v. Pinkus Dermatopathology Lab., P.C.*, 357 Ill. App. 3d 381 (2005).

In the present case, the individual Defendants are afforded additional protection under Illinois law; they are not subject to personal jurisdiction in Illinois because they are protected by

---

[6] Illinois federal cases analyzing the fiduciary shield doctrine provide no binding precedent with respect to the interpretation of Illinois common law. *Rollins v. Ellwood*, 141 Ill. 2d 244, 279 (1990).

the fiduciary shield doctrine. Any actions that these Defendants took in Illinois were solely on behalf of Commercial Electric and not to serve their personal interests. *See Van Auken Affidavit,* ¶ 7; *Young Affidavit,* ¶ 6; *Gamache Affidavit,* ¶ 4. Whether the individual Defendants are officers or shareholders of the company is irrelevant because Commercial Electric is not an Illinois corporation. Thus, the fiduciary shield doctrine applies to prevent this Court from exercising jurisdiction over them because it would be unfair and unreasonable under the Illinois due process clause to assert personal jurisdiction over them based on actions they took to serve their employer. Accordingly, no personal jurisdiction exists over the individual Defendants.

With respect to Commercial Electric and Solid State, the result of the analysis is the same under Illinois law as it is under federal law because it would be unfair, unjust, and unreasonable to require them to defend an action in Illinois when they have little or no contact with that forum.[7]

In conclusion, because the third-party Defendants lack any significant contacts with Illinois—either related to Brenner's cause of action or rising to the level of continuous and systematic—Brenner has failed to establish a prima facie case that jurisdiction exists over any of them. It would be unfair and unreasonable to expect the third-party Defendants to litigate in this forum based on the contacts alleged in the Third-Party Complaint. Therefore, Brenner's Third-Party Complaint should be dismissed for lack of personal jurisdiction.

## B. Brenner's Third-Party Complaint Must Be Dismissed for Insufficient Service of Process

A complaint may be dismissed for insufficiency of service of process. Fed. R. Civ. P. 12(b)(5). Thus, "[a] Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or lack of delivery of the summons and complaint." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1353, at 334 (3d ed. 2004). The procedural requirements for proper service are set forth in Rule 4 of the Federal Rules of Civil Procedure, and they are incorporated into the procedural requirements for third-party practice. *See* Fed. R. Civ. P. 14(a). According to Rule 4(c)(1), a "summons must be served with a copy of the complaint." Fed. R. Civ. P. 4(c)(1). The rule specifically places the responsibility for timely serving the defendant with *both* the summons and complaint on the plaintiff. *Id.* A defendant's

---

[7] See section III.A.1 for a complete discussion.

knowledge of the litigation will not cure defects in a plaintiff's service of process. *Trustees of Local Union No. 727 Pension Fund v. Perfect Parking, Inc.*, 126 F.R.D. 48, 53 (N.D. Ill. 1989).

Brenner filed his Third-Party Complaint against Defendants in federal court on July 8, 2008. He served a summons and a copy of the Third-Party Complaint on all Defendants on July 9, 2008, with the exception of Defendant Gamache, whom he served on July 16, 2008. Each of the summons specifically states that it is being served with a copy of the underlying Complaint filed by PolyBrite. The Complaint filed by PolyBrite, however, was not included with the summons. Therefore, service of process is insufficient in this case, and this matter should be dismissed in accordance with Rule 12(b)(5).

**C.    Brenner's Third-Party Complaint Must Be Dismissed for Failure to State a Claim on Which Relief Can Be Granted**

Brenner fails to state valid claims for contribution and indemnity.[8]  Although Brenner seeks contribution for the breach of fiduciary duty, fraud, and conspiracy claims PolyBrite has leveled against him, contribution is not available to Brenner for these claims because intentional tortfeasors are not entitled to contribution, and the Joint Tortfeasors Contribution Act does not apply to breach of fiduciary duty claims. Further, there is no basis to obtain contribution to the extent that the Complaint seeks injunctive relief. Brenner also alleges no duty owed by the Defendants to PolyBrite, which is necessary to obtain contribution. Similarly, Brenner cannot obtain indemnification for his liability to PolyBrite based on acts he allegedly took as a Commercial Electric agent or employee because PolyBrite's claims against him are based on intentional tort and non-tort liability, and implied indemnification is available only for unintentional torts and only where the one seeking indemnity was both innocent and had a pre-tort relationship with the one who must indemnify. Therefore, Brenner's Third-Party Complaint for contribution and indemnity should be dismissed for failure to state a claim on which relief may be granted.

---

[8] "Indemnity and contribution are mutually exclusive remedies for allocating a plaintiff's damages among joint tortfeasors with liability to the plaintiff." *Frazer v. A.F. Munsterman, Inc.*, 123 Ill. 2d 245, 254 (1988). Brenner may seek one or the other, but he erroneously pleads a right to both. This Court should dismiss his conjunctive claim.

1.      **Brenner's Claim for Contribution Must Be Dismissed**

Illinois law is unequivocal:  intentional tortfeasors are not entitled to contribution under the Joint Tortfeasors Contribution Act, 740 ILCS § 100/1 *et seq.  See, e.g., Gerill Corp. v. J.L. Hargrove Builders*, 128 Ill. 2d 179, 206 (1989).

Fraud, including fraudulent concealment, is an intentional tort.  *Gerill*, 128 Ill. 2d. at 193-94; *see also, Bauer v. Giannis*, 359 Ill. App. 3d 897, 902-03 (2005); *Williams Elec. Games, Inc. v. Garrity*, 366 F.3d 569, 573 (7th Cir. 2004); *Mayer v. Spanel Ltd.*, 51 F.3d 670, 674-75 (7th Cir. 1995) (Easterbrook, J.: "[T]he word 'fraud' implies a requirement of intent to deceive.  *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S. Ct. 1375, 47 L. Ed. 2d 668 (1976) . . . ."); *In re Marriage of Richardson*, 237 Ill. App. 3d 1067 (1992) ("Fraud may consist in the concealment of what is true as well as the assertion of what is false where the concealment is shown to have been done with the intention to deceive under circumstances creating an opportunity and duty to speak.").

Conspiracy is likewise an intentional tort.  *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 64 (1994); *see also McClure v. Owens Corning Fiberglass Corp.*, 188 Ill. 2d 102, 133-34 (1999) ("Civil conspiracy is an intentional tort. . . .  Accidental, inadvertent, or negligent participation in a common scheme does not amount to conspiracy."); *Foodcomm Int'l v. Barry*, 463 F. Supp. 2d 818, 830-31 (2006).

With similar finality, Illinois courts have resolved that a defendant accused of breaching his fiduciary duty cannot rely on the Contribution Act for a third-party claim.  *See, e.g., Wieboldt Stores, Inc. v. Schottenstein*, 111 B.R. 162, 169 (N.D. Ill. 1990); *Am. Envtl., Inc. v. 3-J Co.*, 222 Ill. App. 3d 242 (1991); *People ex rel Hartigan v. Cmty. Hosp. of Evanston*, 189 Ill. App. 3d 206, 213 (1989).

Brenner seeks contribution from the third-party Defendants for their alleged role[9] in the claims PolyBrite has made against him and the damages he may be liable to pay PolyBrite.[10]

---

[9] The third-party Defendants deny that they are liable to PolyBrite for any claims or damages and note that PolyBrite has alleged no improper actions by them.  Nor does third-party plaintiff Brenner make any specific allegations of wrongdoing against them, only insufficient conclusions and unsubstantiated inferences.

[10] That Plaintiff's claims against Brenner, for which Brenner seeks contribution from the third-party Defendants, do not sound in negligence is also evidenced by the economic loss damages PolyBrite seeks.  Economic losses are not generally recoverable in tort actions.  *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 81 (1982).  *Moorman* defined two exceptions to this rule: intentional false representation and negligent misrepresentation by one who is in the business of providing information for

186765                                            17

PolyBrite's claims against Brenner are threefold: (1) breach of fiduciary duty for allegedly starting a competing business while employed by PolyBrite; (2) fraud for failing, in violation of his fiduciary duty, to notify PolyBrite that he and other PolyBrite employees were allegedly forming/operating a competing company while employed by PolyBrite; and (3) conspiracy to breach his fiduciary duty and commit the fraud. *See* Plaintiff's Complaint, Counts I, IV, V, VIII. Thus, Brenner seeks contribution for his alleged breach of fiduciary duty and two intentional torts, none of which support a contribution claim under Illinois law. His claims against each third-party Defendant for contribution must, therefore, be dismissed. Likewise, to the extent that the Complaint seeks injunctive relief, which is its main focus, there is simply no basis to obtain contribution for such injunctive relief.

Brenner fails to allege a duty by the Defendants to PolyBrite. The Contribution Act allows contribution between joint tortfeasors, and in order for parties to be joint tortfeasors to PolyBrite, it necessarily follows that each party must owe a duty to PolyBrite. Brenner fails to allege any such duty from these Defendants to PolyBrite, and for that reason as well, his Third-Party Complaint must be dismissed.

Further, even if Brenner had a valid claim for contribution against Commercial Electric or Solid State, the fiduciary shield doctrine protects the *individual* third-party Defendants from being sued in this Court based solely on actions taken on behalf of their employer and not to further any personal interest.[11] As stated previously, the individual Defendants did not engage in any of the alleged activities for personal gain; they acted solely as employees and on behalf of their employer, Commercial Electric. Brenner cannot seek contribution from any of the individual Defendants because they did not engage in an individual capacity in any of the alleged activities for which Brenner seeks contribution, nor does he allege that they did. Accordingly, the individual third-party Defendants are not joint tortfeasors with him, and Brenner's contribution claim should be dismissed to the extent that it seeks to hold them liable for actions taken on behalf of Commercial Electric.

---

the guidance of others in their business transactions. *Id.* at 88-89. Since there is no allegation that Brenner was in the business of providing information, PolyBrite must, in order to claim damages for economic loss, be suing Brenner for his intentional fraudulent concealment. If not, PolyBrite's fraud claims must be dismissed.

[11] See section III.A.2 for a complete discussion of the fiduciary shield doctrine.

2.    **Brenner's Claim for Indemnification Must Be Dismissed**

a.    *Intentional Tortfeasors and Breachers of Fiduciary Duty Are Not "Innocent Agents"*

The right to indemnity may arise either from an express contract term or by implication from a pre-tort relationship among tortfeasors whose conduct in the occurrence is of a qualitatively different nature. *Frazer v. A.F. Munsterman, Inc.*, 123 Ill. 2d 245, 255 (1988) (citing *Van Slambrouck v. Econ. Baler Co.*, 105 Ill. 2d 462, 469 (1985); *Heinrich v. Peabody Int'l Corp.*, 99 Ill. 2d 344, 349 (1984)).   Since the passage of the Illinois Contribution Act, implied indemnity is available only in very limited circumstances, including strict liability actions in which the indemnitee is faultless, where a faultless principal has been held vicariously liable for the conduct of its agent, and possibly where a faultless or innocent agent seeks indemnity from its principal. *Byrton Dairy Prod. v. Harborside Refriger. Serv., Inc.*, 991 F. Supp. 977, 986 (N.D. Ill. 1997).   "For an agent to be faultless in following another's instructions, it must have had no duty to recognize the error in the principal's instruction or to otherwise act to prevent the injury." *Id.*   Thus, one who is guilty of fraud may not seek indemnity from one who is careless. *St. Joseph Hosp. v. Corbetta Const. Co., Inc.*, 21 Ill. App. 3d 925, 960 (1974).   Nor is implied indemnity available for intentional torts, since an intentional tortfeasor cannot be innocent or free of fault. *See, e.g.*, *Proctor & Schwartz, Inc. v. U.S. Equip. Co.*, 624 F.2d 771, 773 (6th Cir. 1980) (holding that "traditional common law principles . . . require[] that the party seeking indemnity be free from personal fault").   It is not available for breach of fiduciary duty, which is not a tort under Illinois law. *See Jadom Furniture Co., Ltd. v. October Group Int'l*, No. 05-C-6077, 2007 WL 2359767, *2 (N.D. Ill. 8-14-2007) (citing *Kinzer v. City of Chicago*, 128 Ill. 2d 437, 445 (1989)).

There is no express contract for indemnity between Brenner and either Commercial Electric or Solid State.   It is, therefore, the "innocent agent" theory on which Brenner seems to rely for his claim for indemnification from Commercial Electric and Solid State Solutions.[12]   He seeks indemnification for any liability he may be found to have to PolyBrite for acts he allegedly undertook on behalf of Commercial Electric or Solid State after he was terminated from PolyBrite and while he was a consultant to Commercial Electric or Solid State.

---

[12] Only for the limited purpose of this Motion does Commercial Electric and Solid State accept Brenner's allegations as to his status as their agent or employee after PolyBrite terminated him.

Solid State and Commercial Electric cannot be liable to Brenner for implied indemnification, however, because, as Brenner notes, his relationship with either began *after* he was terminated from PolyBrite. Commercial Electric did not engage him as a consultant until on or about November 30. Thus, Brenner has alleged that his relationship with Commercial Electric and/or Solid State was *post* his alleged underlying torts for which PolyBrite sues him, rather than pre-tort, as would be required for indemnification. Because PolyBrite has sued Brenner for breach of fiduciary duty, however, which is not a tort, and for fraud and conspiracy, which are intentional torts, implied indemnity is not available to him in this case. To the contrary, Brenner's third-party indemnification claims are barred by "*in pari delicto*," as Brenner was a participant in the misconduct giving rise to his supposed indemnification claim. *Williams Elec. Games*, 366 F.3d at 574 (citing *Pinter v. Dahl*, 486 U.S. 622, 636, 108 S. Ct. 2063, 100 L. Ed. 2d 658 (1988)). For PolyBrite to prove its claims against Brenner and obtain damages for which Brenner seeks indemnity, PolyBrite would have to prove that Brenner himself breached his fiduciary duty to PolyBrite, and/or fraudulently concealed facts that he had a fiduciary duty to disclose, and/or intentionally conspired to breach or defraud. Brenner cannot be anyone's *innocent* agent and yet be found liable to PolyBrite on its claims against him. His claim for indemnification against Commercial Electric and Solid State must, therefore, be dismissed.

### b.  *Time Proves All Truths*

The physics of time further defeats Brenner's claim for indemnification. PolyBrite's claims of breach of fiduciary duty and fraudulent concealment when Brenner had a duty to speak can only be for acts Brenner took while he was still PolyBrite's employee, *i.e.*, *before* November 14, 2007. *See Williams Elec. Games*, 366 F.3d at 580. Brenner's claim for implied indemnification, though, depends on his proving an employment or agency relationship with Commercial Electric or Solid State *prior* to his breaching, defrauding, or conspiring to breach or defraud. Brenner admits in his Third-Party Complaint that his relationship with Commercial Electric and Solid State began *after* PolyBrite terminated him. *See* Third-Party Complaint, ¶ 30. *After* PolyBrite terminated him, Brenner owed PolyBrite no fiduciary duty and could not then have fraudulently concealed his or other employees' alleged creation of a competing business from PolyBrite based on a fiduciary duty to speak. Neither would he have any continuing reason to defraud PolyBrite, since PolyBrite alleges that the purpose of the fraudulent concealment was to prevent PolyBrite from firing him. *See* Plaintiff's Complaint, ¶¶ 148, 187. *After* PolyBrite

terminated Brenner, and *after* Brenner began his alleged agency/employment relationship with Commercial Electric, whatever acts he took cannot be acts in breach of the fiduciary duty he owed to PolyBrite *before* PolyBrite terminated him. Time proves all truths, including that Commercial Electric and Solid State cannot owe Brenner indemnification if PolyBrite proves him liable for the only claims they made against him, *i.e.*, for fiduciary duty and fraud based on that fiduciary duty. Therefore, Brenner's indemnification claims must be dismissed.

### D. Brenner Fails to Plead Fraud and Conspiracy with Sufficient Particularity, and His Third-Party Claims Based on These Intentional Torts Should Be Dismissed

Brenner sues the third-party Defendants "for contribution and indemnity for the claims asserted against him in [PolyBrite's] Complaint." *See* Third-Party Complaint, ¶ 1. He alleges, without specificity, and in a supreme effort to obfuscate the timing and relative culpability of his and the third-party Defendants' roles, that each of them "committed certain acts in furtherance of the supposed conspiracies, frauds, and breaches of fiduciary duty alleged against defendant/third-party plaintiff Brenner." Third-Party Complaint, ¶¶ 3, 6, 9, 12, 15.

When a plaintiff alleges fraud, Federal Rule of Civil Procedure 9(b) requires that "the circumstances constituting fraud be pled with particularity." The plaintiff must allege "'the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.' In other words, the plaintiff must allege the 'who, what, when and where' of the alleged fraud." *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)) (internal citations omitted). Conspiracy must similarly be pled with particularity. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507-08 (7th Cir. 2007) ("Although claims of . . . civil conspiracy are not by definition fraudulent torts, Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations."). Thus, where "the complaint tells us nothing about the nature of the purported agreement to defraud the plaintiffs, such as when it was made, or which individuals . . . arranged the conspiracy," a civil conspiracy claim must be dismissed. *Borsellino*, 477 F.3d at 509. Plaintiff must plead the "critical details regarding the alleged fraud conspiracy as it relates to" each third-party defendant, or the conspiracy claim must be dismissed as to them. *Id.*

186765

21

Federal Rule of Civil Procedure 8, meanwhile, requires that to survive a motion to dismiss under Rule 12(b)(6), a complaint (1) "must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests," and (2) the "allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above a 'speculative level.'" *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65, 1973 n.14 (2007)). If certain allegations are inconsistent with the terms of a written document that is attached to or otherwise considered part of the complaint, the inconsistent allegations are not accepted as true, and the terms of the written document, fairly construed, prevail. *Perkins v. Silverstein*, 939 F.2d 463, 469 n.4 (7th Cir. 1991). The Court in *Bell* "wished to avoid the 'in terrorem' effect of allowing a plaintiff with a largely groundless claim to force defendants into either costly discovery or an increased settlement value." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

1.    **Brenner's and PolyBrite's Allegations, if Any, of Fraud Against Third-Party Defendants Are Insufficient to State a Claim**

Neither Brenner nor PolyBrite allege anywhere in their complaints the "who, what, when and where" of any fraudulent representation or omission by any of the third-party Defendants, **nor any duty of any of the third-party Defendants to PolyBrite to speak**. Neither the Complaint nor the Third-Party Complaint provide the "critical details regarding the alleged fraud conspiracy as it relates to" each third-party Defendant. Any allegations of fraud or conspiracy to commit fraud, and any attempt to hold the third-party Defendants liable to either PolyBrite or Brenner based on their alleged participation in a conspiracy to commit fraud must be dismissed for lack of these essential, specific allegations.

2.    **Brenner's and PolyBrite's Allegations, if Any, of Breach of Fiduciary Duty Against Third-Party Defendants Are Insufficient to State a Claim**

This Court has spoken clearly on what is necessary to state a cause of action for breach of fiduciary relationship. *Dames & Moore v. Baxter & Woodman*, 21 F. Supp. 2d 817, 823 (N.D. Ill. 1998). A plaintiff must allege that the defendant owed a fiduciary duty to the plaintiff, and that duty must exist as a matter of law. *Id.* Under Illinois common law, a fiduciary relationship ends when the employment ends. *Id.* Certainly neither PolyBrite nor Brenner allege that the third-party Defendants owed, much less violated, any fiduciary duty to PolyBrite. Any claim

that they could be liable to PolyBrite or Brenner would thus have to derive from either a conspiracy to join Brenner in his violations once he began to consult for Commercial Electric or Solid State after being terminated from PolyBrite, or for acts that he undertook as Commercial Electric's or Solid State's consultant after his termination from PolyBrite. But because Brenner owed no fiduciary duties to PolyBrite after his termination, which was effective on November 14, 2007, his actions after that date cannot constitute a breach of fiduciary duty to PolyBrite or violate a fiduciary duty to speak. *Id.* To the extent that PolyBrite's claims against Brenner (and by derivation, Brenner's claims against the third-party Defendants) for breach of fiduciary duty, conspiracy to breach fiduciary duties, fraudulent concealment, or conspiracy to conceal fraudulently based on a fiduciary duty to speak, are based on activities performed after the cessation of his employment with PolyBrite, those claims must be dismissed. *Id.*

### 3. Brenner's and PolyBrite's Allegations, if Any, of Conspiracy Against Third-Party Defendants Are Insufficient to State a Claim

Brenner and PolyBrite have failed to state facts from which the third-party Defendants' participation in a conspiracy may plausibly be inferred. The function of a conspiracy claim is to extend the liability in tort beyond the active wrongdoer to those who have merely planned, assisted, or encouraged the wrongdoer's acts. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62 (1994) (citing W. Prosser, *Torts* § 46, at 293 (4th ed. 1971)). To state a claim for civil conspiracy, the plaintiff must allege the following: (1) an agreement between each of the co-conspirators for the purpose of accomplishing some unlawful purpose or some lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement. *Borsellino*, 477 F.3d at 509; *Dames & Moore*, 21 F. Supp. at 824; *Adcock*, 164 Ill. 2d at 63. A breach of fiduciary duty is not a tort; therefore, PolyBrite's allegation that any of the defendants breached their fiduciary duties to it cannot constitute the necessary tortious act. Neither, however, can any of the defendants' alleged fraudulent concealment of their breach of fiduciary duty constitute the necessary tort in furtherance of the conspiracy, as the duty to speak arose only from their fiduciary duty. *See, e.g., Cooper Linse Hallman Capital Mgmt. v. Hallman*, 368 Ill. App. 3d 353, 357 (2006) (citing *Foodcomm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003)) ("Officers and directors have been found to have breached their fiduciary duties when, while still employed by the company, they (1) fail to inform the company that employees are forming a rival company or engaging in other fiduciary breaches . . . ."); *Neptuno Treuhand-*

*Und Verwaltungsgesellschaft MBH v. Arbor*, 295 Ill. App. 3d 567, 573 (1998) ("There is no duty to speak absent a fiduciary or other legal relationship between the parties.").

Where, as here, the conspiracy claim rests on the same allegations as the fraud claim, the conspiracy claim is redundant and should be dismissed. *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 968, 975 (N.D. Ill. 2000); *Real Colors, Inc. v. Patel*, 974 F. Supp. 645, 651 (N.D. Ill. 1997). A civil conspiracy also requires damages. Unless a plaintiff alleges additional damages as a result of the conspiracy, beyond those alleged as a result of the underlying tort, the conspiracy claim "would merely result in another attempt to recover the same damages." *Real Colors*, 974 F. Supp at 651; *David Co. v. Emerald Casino, Inc.*, No. 99-C-6822, 2003 WL 22113414, *9 (N.D. Ill. Sept. 11, 2003). In the case at bar, PolyBrite claims the same harm from the alleged conspiracy as from the breach of fiduciary duty and fraudulent omission. The conspiracy claims are, therefore, merely redundant and should be dismissed.

Third-party Defendants cannot be liable to PolyBrite or Brenner for conspiracy for another essential reason. The only allegations Brenner makes against the third-party Defendants, as best they can decipher, are for supposed agreements and conduct after Brenner apparently alleges that he was fired from PolyBrite and became the agent of Commercial Electric or Solid State.[13] A principal cannot conspire with its agents. *Thomas & Betts*, 108 F. Supp. 2d at 975 (citing *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12 (1998); *Healy v. CTP, Inc.*, No. 93-C-1727, 1995 WL 9203, *2 (N.D. Ill. Jan 9, 1995)). Thus the third-party Defendants cannot be liable to PolyBrite as co-conspirators and, therefore, cannot be liable for contribution or indemnity to Brenner, as he may be alleging, for such a conspiracy.

**E.    The Court Should Strike Brenner's Allegations and Demands Under Fed. R. Civ. P. 14(c) Admiralty or Maritime Claims**

Rule 14(c)(2) of the Federal Rules of Civil Procedure permits a third-party plaintiff in admiralty to demand that third-party defendants defend directly against all claims of the original plaintiff. Neither PolyBrite in its original complaint nor third-party plaintiff Brenner has asserted a single admiralty claim under Rule 9(h) of the Federal Rules of Civil Procedure. Not since 1946 has a non-admiralty defendant been permitted to waste the time of the Court and the reputations

---

[13] Indeed, the only "agreement" Brenner alleges appears to be the agreement to engage him as a consultant for Commercial Electric. This cannot fairly be read as an "agreement" to join a conspiracy to breach fiduciary duties Brenner owed formerly, but *not* at the time of the alleged "agreement."

and money of others by offering up those whom the plaintiff does not wish to sue in the guise of third-party defendants directly liable to plaintiff. *See* Fed. R. Civ. P. 14, Advisory Committee Notes, 1946 Adoption. The Court should therefore strike as irrelevant, inapplicable, and made in bad faith, Brenner's preposterous allegations and demands at Paragraphs 5, 8, 11, 17, and Prayer (2) and (4) for relief under Rule 14(c)(2) requiring a third-party defendant in admiralty to defend against the claims of the original plaintiff notwithstanding any liability the third-party plaintiff may have to the original plaintiff.

**F.      The Court Should Strike Brenner's Paragraphs 46-55 Pursuant to Rule 12(f)**

According to Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Paragraphs 46-55 of Brenner's Third-Party Complaint are irrelevant to his claims for contribution and indemnification, and they are largely untrue as well as defamatory. Therefore, they should be stricken in accordance with Federal Rule of Civil Procedure 12(f).


## IV. CONCLUSION

Brenner's Third-Party Complaint should be dismissed for all of the foregoing reasons. This Court lacks personal jurisdiction over the third-party Defendants because they have insufficient contacts with Illinois. Additionally, the individual third-party Defendants are protected by the fiduciary shield doctrine under Illinois law because any actions they took in Illinois were taken solely on behalf of their employer and not out of any personal interest. Brenner's Third-Party Complaint should also be dismissed based on insufficient service of process resulting from Brenner's failure to serve the summons together with a copy of PolyBrite's original complaint. Further, Brenner fails to state a claim for contribution, which is not available for underlying claims of breach of fiduciary duty and the intentional torts of fraud and conspiracy, and contribution is similarly unavailable when the underlying complaint seeks injunctive relief. Brenner also fails to allege a duty from these Defendants to PolyBrite, which is necessary for a contribution action. Brenner's indemnification claim should also be dismissed because Brenner fails to state a claim for quasi-contractual indemnification, which is not available to one who is not himself wholly innocent and who did not have a pre-tort relationship with the one from whom indemnification is sought. In addition, the Third-Party Complaint should be dismissed because Brenner fails to plead sufficiently to put the third-party Defendants

on notice of the claims against them and admit of the possibility that he might successfully support the claims, and he fails to plead either fraud or conspiracy with sufficient particularity.

Further, because neither the third-party nor the original complaint sounds in admiralty, those portions of Brenner's Third-Party Complaint relying on Federal Rule of Civil Procedure 14(c)(2) should must be dismissed because Brenner fails to state a valid claim for defense under that Rule. Moreover, paragraphs 46-55 of Brenner's Third-Party Complaint should be stricken because they are both irrelevant to his contribution and indemnification claims and because they are false and defamatory. Accordingly, the third-party Defendants respectfully request that the Third-Party Complaint be dismissed in accordance with the above-mentioned rules.

Respectfully submitted,

Amy Lee Stewart (Ark. Bar No. 88167)
Joi Leonard (Ark. Bar No. 2007228)
ROSE LAW FIRM
a Professional Association
120 East Fourth St.
Little Rock, AR 72201
Telephone: (501) 375-9131
Facsimile: (501) 375-1309
astewart@roselawfirm.com
jleonard@roselawfirm.com

WILLIAMS, MONTGOMERY & JOHN
20 North Wacker Drive, Suite 2100
Chicago, Illinois 60606-3094
Telephone: (312) 443-3200
Facsimile: (312) 630-8540
tff@willmont.com
rmm@willmont.com


  _/s/_ Thomas Falkenberg_____
Thomas Falkenberg
Illinois Bar No. 6205289
R. Michael McCann
Illinois Bar No. 6275477


Counsel for:
Commercial Electric, LLC,
Solid State Solutions, LLC,
Phil K. Gamache,
Bob Van Auken, and
William Young

## CERTIFICATE OF SERVICE

I, Thomas Falkenberg, hereby certify that on July 29, 2008, I caused the **Brief in Support of Motion to Dismiss Third-Party Complaint**, to be filed electronically with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all ECF registered parties indicated below. Parties may access this filing through the Court's CM/ECF system.

**Constantine John Gekas**
GEKAS & ASSOCIATES, LTD.
11 S. La Salle St., Ste. 1700
Chicago, IL 60603
Telephone: (312) 726-4501
Facsimile: (312) 726-4505
cjg@cjglaw.com

**William G. Sullivan**
**Mason N. Floyd**
MARTIN, BROWN & SULLIVAN
321 S. Plymouth Court, 10th Floor
Chicago, IL 60604
sullivan@mbslaw.com
floyd@mbslaw.com

**Mark J. Rose**
LAW OFFICES OF MARK J. ROSE, ESQ.
200 W. Adams St., Ste. 2850
Chicago, IL 60606
Telephone: (312) 704-1446
Facsimile: (312) 704-8233
MJRoseEsq@aol.com

**Sigi M. Offenbach**
PITLER & MANDEL
39 S. LaSalle St., Ste. 1220
Chicago, IL 60603
Telephone: (312) 782-9466
sigi@pitlermandell.com

/s/  Thomas Falkenberg

186605                                27