IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| POLYBRITE INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.  08 C 1797 |
| | ) | Judge R. Gettleman |
| RICHARD BRENNER, PAUL CHRISTENSEN | ) | Magistrate Judge Nolan |
| and CHEE NGON WONG, | ) | |
| Defendants. | ) | |

## MOTION FOR ORDER COMPELLING DISCOVERY
## AND FOR SUPPLEMENTAL DISCOVERY

NOW COMES the Defendant, Paul Christensen, by its attorneys, pursuant to Rule 37 of the Federal Rules of Civil Procedure and L. R. 37.2 of the Rules of the United States District Court of the Northern District of Illinois, and hereby requests an order compelling full and complete answers to discovery propounded and for leave to file supplemental discovery requests in excess of the number permitted under the rules, and in support thereof, states as follows:

1.  On April 7, 2008, the Defendant served the Plaintiff with his First Set of Discovery Requests.  A true and correct copy is attached hereto as Exhibit "A."

2.  On June 13, 2008, the Plaintiff mailed its Answers to Defendant Paul Christensen's First Set of Discovery Requests.  A true and correct copy is attached hereto as Exhibit "B."  The Plaintiff objected to and refused to answer Request 13, Request 15, Request 22, Request 23 and Request 25.

3.  On June 24, 2008, this Defendant's counsel sent Plaintiff's counsel a fax requesting the responsive documents and explaining the relevance of those documents.  A

true and correct copy is attached hereto as Exhibit "C."

4.    The movant certifies that he has in good faith conferred with the Plaintiff's attorney in an effort to secure the information without court action. These efforts, in addition to the attached fax, includes telephone calls and in person consultations of June 25, 2008, July 21, 2008 and July 30, 2008.

5.    As a result of these efforts, the Plaintiff has sent an e-mail refusing to produce the requested items. A true and correct copy of this e-mail is attached hereto and marked as Exhibit "D."

6.    As explained in Exhibit C, these documents are not only relevant, but are critical to this case and to examine the veracity of the allegations of the Complaint and the Answer to this Defendant's Counterclaim. In fact the very first paragraph of the Verified Complaint speaks about "defrauding [the Plaintiff] out of millions of dollars" and that it is one of the leading developers of lighting technology. That paragraph alleges a figure for projected sales. Paragraph 29 of the Verified Complaint speaks about payments to Wellstar Electronics. Paragraph 35 of the Verified Complaint alleges certain accounts, such as Macy's, Neiman Marcus, Dilliard's, Autozone, Beck's and Walmart were some of its most important accounts. That paragraph alleges that Mr. Christensen was one of [the Plaintiff's] highest paid employees. In addition paragraph 108 of the Complaint alleges that the Plaintiff suffered damages and continues to suffer damages and further alleges that the damages are not less than $1,000,000.00. Clearly, Christensen's requests for documents are relevant and critical to test the truth or falsity of the allegations of the Complaint.

7.    Furthermore, the objections to these requests relative concerning the "highly

2

sensitive" nature of these documents is completely inappropriate as the parties have entered into an agreed Protective Order, have been bound by that agreement and have submitted that agreement to this Court.

8.      In addition to the motion to compel, this Defendant has asked the Plaintiff to agree to further interrogatories, which may exceed the number allowed under F.R.C.P. 33, which is twenty-five.   The reason for the necessity of further interrogatories is two fold.  The first reason is that the requests contained in Exhibit A were sent on an emergency basis in preparation for a hearing on a motion for a preliminary injunction.  The second reason is that since the promulgation of Exhibit A, this Defendant has filed its Counterclaim and the Plaintiff has filed a nineteen page reply which contains numerous affirmative allegations.

9.      The Plaintiff has not agreed to this request in accordance with Exhibit D.

WHEREFORE the Defendant, Paul Christensen, requests the following relief:

a.   That this Court issue an Order Compelling Discovery and requiring the Plaintiff to answer Requests 13, 15, 22, 23 and 25.

b.   That this Court grant this Defendant's request to issue further interrogatories to the Plaintiff, even in excess of twenty-five in total.

c.   That this Court grant this Defendant its costs and fees relative to the presentation of this Motion.

Paul Christensen

By: _____

One of his attorneys

3

Sigi M. Offenbach
Philip L. Mandell
Pitler and Mandell
39 South LaSalle Street
Suite 1220
Chicago, Illinois  60603
(312) 782-9466

## CERTIFICATION

The undersigned hereby certifies that the statements contained in paragraph 4 herein are true and correct.

Sigi M. Offenbach

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT
## EASTERN DIVISION

**POLYBRITE INTERNATIONAL, INC.,**      )
**an Illinois Corporation,**      )
                Plaintiff,      )
                      )
**v.**      )      Case No. 08 C 1797
                      )      Judge R. Gettleman
**RICHARD BRENNER, PAUL CHRISTENSEN,**      )
**and CHEE NGON WONG,**      )
                      )
                Defendants.      )

## DEFENDANT PAUL CHRISTENSEN'S FIRST SET OF DISCOVERY REQUESTS

Now come the Defendant, Paul Christensen ("PC") by and through his attorneys, Sigi M.

Offenbach and Philip L. Mandell of Pitler and Mandell, and pursuant to Rule 33 and 34 of

the Federal Rules of Civil Procedure, propounds the following interrogatories and requests

to produce to the Plaintiff to be answered separately and fully in writing, under oath and

on or before April 9, 2008.

## DEFINITIONS AND INSTRUCTIONS

1.      Whenever in these Interrogatories there is a request to identify a person, set forth

      his or her name, title or position, present or last known business or home address

      and  present or last known employer.

2.      Whenever in these Interrogatories there is a request to identify a document, state

      the  date,  the  author  and  signatories,  the  type  of  document,  (e.g.  letter,

      memorandum), the custodian and the location.

3.      Whenever answering each interrogatory, the answer should identify each document

      relied  upon  which  forms  a  basis  for  the  answer  or  in  any  way  corroborates  the



EXHIBIT

**A**

answer given or the substance of the answer given. Each document to be so identified may be produced in lieu of such identification.

4.     Each interrogatory listed herein shall be construed to include any supplemental information, knowledge or data responsive to these interrogatories which is later discovered by the Plaintiff.

5.     The term "document" includes all writings or information on a computer of every kind including, but not limited to, letters, memoranda, reports, studies, diary entries, pamphlets, notes, charts, spreadsheets, accounting records, magnetic tape, sound or video reproductions, computer screens, facsimile transmittals, e-mails and any duplicates thereof.

6.     The term "Plaintiff," "You," or "Polybrite" means Polybrite International, Inc. and its agents, representatives, officers, directors, related entities, predecessor entities, agents and attorneys.

7.     "State the Basis" for a claim, allegation or contention means to describe chronologically each and every fact, action or occurrence that relates to the particular claim, allegation or contention. In describing each such fact, action or occurrence, set forth each and every person who has knowledge of such fact, action or occurrence, each and every relevant document or communication and identify the source of the information contained in the response, including the identity of all persons and documents which you relied upon or consulted in preparing your response. Also provide all documents which relate in any way to the interrogatory or to the interrogatory answer.

## INTERROGATORIES AND REQUESTS TO BE ANSWERED

**Interrogatory No. 1.**    Identify the person or persons who are preparing the Answers to Interrogatories and each person assisting. (See Instruction No. 1).

**Answer:**

**Interrogatory No. 2**    For each paragraph of the Complaint, identify all persons who have or whom you believe have knowledge of facts relating to the allegation of that paragraph.  In addition set forth the facts about which the person has knowledge and all relevant or related documents.

**Answer:**

**Interrogatory No. 3**    For each paragraph of the Complaint, identify all persons whom you believe have documents in their possession relating to the allegations of that paragraph and identify those documents.

**Answer:**

**Interrogatory No. 4**    Identify each person that you have contacted or intend to contact to be a witness at the trial of this matter and identify

the substance of their testimony.

**Answer:**

**Request No. 5**     State the basis for the allegation in paragraph 1 of the Complaint that "Polybrite is one of the world's leading developers of lighting technology." Provide all documents and witnesses which support this allegation.

**Answer:**

**Request No. 6**     Identify each person from whom statements concerning the allegation contained in the Complaint have been taken, either orally or in writing, by you or at your direction.   Provide such statements and any documents related to such statements.

**Answer:**

**Request No. 7**     Identify each and every expert or opinion witness whom you have contacted or intend to contact in connection with this case.  Identify that person in accordance with Instruction No. 1, provide the substance of their testimony, their qualifications and each and every

relevant document.

**Answer:**


**Request No. 8**    Relative to the allegations concerning the projections made by PC on July 30, 2007, state who requested those projections, why the projections were requested, whether Polybrite was attempting to obtain more capital and the role that Sandra Goeken had relative to the projections. Produce all documents, e-mails and correspondence by and between Sandra Goeken and PC relative to the projections and their purpose.

**Answer:**


**Request No. 9**    Relative to your allegation that PC resigned on November 27, 2007, state all conversations relative to this resignation, state whether Polybrite owed PC reimbursement for expenses at that time and provide all documents and e-mails relative to his resignation.

**Answer:**


**Request No. 10**    State the basis for the allegations in Paragraph 4 of the Complaint that "This conspiracy was later joined by Christensen." State the date

that Polybrite is alleging, state all witnesses and the substance of their knowledge, provide all documents which relate or serve a basis for this allegation.

**Answer:**


**Request No. 11**    State the basis for the allegation in paragraph 5 of the Complaint, as it relates to PC, that the "Defendants hid their actions by filing false reports with Polybrite." State all witnesses and the substance of their testimony, all supporting documents and e-mails, when these reports occurred and to whom they were addressed.

**Answer:**


**Request No. 12**    Relative to the formation of CDW Lighting Technologies ("CDW") and Wellstar Lighting LLC ("Wellstar Lighting"), state whether Polybrite contends that PC was involved with the formation of either company. If the answer is in the affirmative, provide all supporting documents, all witnesses and all information substantiating this contention.

**Answer:**


**Request No. 13**    Produce the organizational chart for Polybrite for 2006 or 2007, list the name and address of each person, salary and all compensation

for each of these individuals.

**Answer:**

**Request No. 14**    Relative to Commercial Electric LLC ("CE"), state whether Polybrite is aware that CE had a prior working relationship with Nieman Marcus and Dillard's, prior to April 19, 2007.  If the answer to the foregoing is in the affirmative, state to the best of your knowledge, when CE's relationship with Dillard's began, whether CE had sold lighting to Dillard's prior to April 19, 2007, the types of lighting the CE sold to Dillard's prior to April 19, 2007, whether CE ever had an exclusive distributor relationship with Polybrite, and whether CE in 2006 and 2007 was permitted to sell Dillard's lamps, electronics and lighting needs other than those manufactured or distributed by Polybrite.

**Answer:**

**Request No. 15**    Relative to the allegation in the Complaint at paragraph 35 that "some of Polybrite's most important accounts, includ[ed] Macy's, Neiman Marcus, Dillard's, Autozone, Beck's and Walmart," state the basis for this allegation, state whether Polybrite ever sold these accounts in 2006 and 2007 and produce all supporting documents, including purchase orders, invoices, statements of account and any other

documents which reflect or relate to these sales.

**Answer:**

**Request No. 16**    Prior to Polybrite's hiring of PC, to the best of your knowledge was PC an independent contractor and an outside, non-exclusive, sales representative for Polybrite and sold solid state LED products. Include all documents which reflect or relate to PC's activities with Polybrite prior to his hire as an employee.

**Answer:**

**Request No. 17**    Prior to November 14, 2007, is it not true the Carl Scianna informed PC that he would no longer be handling the account, Florida Plastics. If the foregoing is in the affirmative, state the reason for the decision and all documents relating to or reflecting such a decision.

**Answer:**

**Request No. 18**    Relative to the allegation in paragraph 77 of the Complaint, "On information and belief the purpose [of PC's going to Polybrite on November 2, 2007] was to surreptitiously remove Polybrite's files and product, which he had no right to possess," state the basis for this allegation, all witnesses, whether Polybrite has any knowledge that PC removed Polybrite's files and products and all documents relating

-8-

to or reflecting this allegation.

**Answer:**

**Request No. 19**    Relative to the allegation in the Complaint at paragraph 59, "From the time that he took over the effort to obtain UL approval, Christensen represented, directly or by implication, that the UL approval process was going according to schedule and was not a critical issue in regard to Polybrite's relationship with Dillard's," state the basis for this allegation, provide a list of all witnesses and their testimony, provide all documents relating to this allegation, state whether Polybrite understood that PC had the expertise to obtain UL approval.

**Answer:**

**Request No. 20**    Relative to the allegation in paragraph 63 of the Complaint, that "They [the stated reasons for CE's decision] were false and pretextual. They were known by both Brenner and Christensen to be false and pretextual.....," state the basis for this allegation, all witnesses relevant to this allegation and produce all documents supporting or relating to this allegation.

**Answer:**

**Request No. 21**    Provide copies of all manufacturing agreements by and between

-9-

Wellstar Electronics and Polybrite and Vigor and Polybrite.

**Request No. 22**    Provide all sales records of all high brightness products from June of 2006 through November of 2007, including Westinghouse LED Lighting, W-LED, Westinghouse and Borealis Lighting branded products.

**Request No. 23**    Provide all invoices and payables for Polybrite to UL, Shape LLC, Citizen LED and Wellstar Electronics.

**Request No. 24**    Provide all documents relating to the Westinghouse and Polybrite litigation.

**Request No. 25**    Provide all sales records from Polybrite for low power LED consumer goods and safety products, branded Polybrite for 2006 and 2007.

**Request No. 26**    Provide all documents relating to the Illinois Department of Labor claim by PC against Polybrite.

**Paul Christensen**

By: _____
       One of his Attorneys

-10-

Sigi M. Offenbach
Philip L. Mandell
Pitler and Mandell
39 South LaSalle Street
Suite 1220
Chicago,   Illinois   60603
312/782-9466

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he caused a true and correct copy of the
Paul Christensen's First Set of Discovery Request to be served by e-mail upon:

Constantine John Gekas, Esq.  CJG@cjglaw.com
Mark J. Rose, Esq.  MJRoseEsq@aol.com
William G. Sullivan  sullivan@mbslaw.com
Mason N. Floyd  floyd@mbslaw.com

on April 7, 2008.

Sigi M. Offenbach

-11-

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| POLYBRITE INTERNATIONAL, INC.,<br>an Illinois Corporation, | ) | |
| | ) | No. 08 C 1797 |
| Plaintiff, | ) | |
| | ) | Hon. Robert W. Gettleman |
| v. | ) | Judge Presiding |
| | ) | |
| RICHARD BRENNER, an individual,<br>PAUL CHRISTENSEN, an individual, and<br>CHEE NGON WONG, an individual, | ) | Hon. Nan R. Nolan,<br>Magistrate Judge |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S ANSWERS TO DEFENDANT
PAUL CHRISTENSEN'S FIRST SET OF DISCOVERY REQUESTS**

Plaintiff, PolyBrite International, Inc., by and through its attorneys, as and for

its Answers to Defendant Paul Christensen's First Set of Discovery Requests, states

as follows:

**INTERROGATORIES AND REQUESTS TO BE ANSWERED**

**Interrogatory No. 1.**      Identify the person or persons who are preparing the
Answers to Interrogatories and each person assisting. (See Instruction No. 1).

**Answer:**

These answers to interrogatories have been formulated by information given

by persons over a period of months including, but not limited to, the following:  Ned

Othman, Carl Scianna and Mike Eddy.  The answers as contained herein were drafted

by counsel.

**Interrogatory No. 2.**      For each paragraph of the Complaint, identify all persons
who have or whom you believe have knowledge of facts relating to the allegation of
that paragraph.  In addition set forth the facts about which the person has knowledge
and all relevant or related documents.



EXHIBIT
**B**

**Answer:**

Objection. This interrogatory is excessively burdensome, especially in view of

the fact that plaintiff has made initial disclosures under Rule 26(a)(1), presented six

witnesses for depositions and produced numerous documents.

**Interrogatory No. 3.**    For each paragraph of the Complaint, identify all persons
whom you believe have documents in their possession relating to the allegations of
that paragraph and identify those documents.

**Answer:**

Objection. This interrogatory is overly broad and unduly burdensome.

**Interrogatory No. 4.**    Identify each person that you have contacted or intend to
contact to be a witness at the trial of this matter and identify the substance of their
testimony.

**Answer:**

Plaintiff intends to examine the following persons:  those persons who

submitted declarations to the Verified Complaint for Injunctive and Other Relief, also

those individuals presented by plaintiff for their depositions previously taken. Their

testimony will be consistent with the knowledge of the facts which they testified to

either in the Verified Complaint for Injunctive and Other Relief and their depositions.

It is premature to determine what testimony will be offered by what witnesses at

trial.

**Request No. 5.**    State the basis for the allegation in paragraph 1 of the Complaint
that "Polybrite is one of the world's leading developers of lighting technology."
Provide all documents and witnesses which support this allegation.

**Answer:**

The allegation is based upon customer, reseller and prospective customer

validation, other market validation of PolyBrite's lamp products. Plaintiff also

reviewed advertised product claims of competitive products, and conducted in-house

review and testing of competitive products. The allegation is also supported by

various reports of testing of competitive products conducted by governmental

agencies.

See Exhibit 1 to the Verified Complaint for Injunctive and Other Relief.

See electronic documents in corresponding file on disc labeled "PolyBrite

Responses to Defendants' Discovery Requests 6/13/08" produced herewith.

**Request No. 6.**    Identify each person from whom statements concerning the
allegation contained in the Complaint have been taken, either orally or in writing, by
you or at your direction. Provide such statements and any documents related to such
statements.

**Answer:**

None.

**Request No. 7.**    Identify each and every expert or opinion witness whom you have
contacted or intend to contact in connection with this case. Identify that person in
accordance with Instruction No. 1, provide the substance of their testimony, their
qualifications and each and every relevant document.

**Answer:**

None yet identified.

**Request No. 8.**    Relative to the allegations concerning the projections made by PC
on July 30, 2007, state who requested those projections, why the projections were
requested, whether Polybrite was attempting to obtain more capital and the role that
Sandra Goeken had relative to the projections. Produce all documents, e-mails and
correspondence by and between Sandra Goeken and PC relative to the projections
and their purpose.

3

**Answer:**

Sandra Goeken Miles requested Defendant Christensen to prepare projections of anticipated sales to certain customers and of certain products. Accurate projections of market and customer potential were required by Sandra Goeken Miles and other personnel of PolyBrite for various purposes, including budgeting, resource and personnel planning, customer and reseller presentations and investor presentations.

See Exhibit 1 to the Verified Complaint for Injunctive and Other Relief.

See electronic documents in corresponding file on disc labeled "PolyBrite Responses to Defendants' Discovery Requests 6/13/08" produced herewith.

**Request No. 9.**    Relative to your allegation that PC resigned on November 27, 2007, state all conversations relative to this resignation, state whether Polybrite owed PC reimbursement for expenses at that time and provide all documents and e-mails relative to his resignation.

**Answer:**

This information has been fully disclosed in the depositions of Carl Scianna and Mike Eddy. Attempts to resolve this dispute over expenses were made but refused by Defendant Christensen. See documents previously produced bearing Bates labels PB614, PB616 to 620, PB627 to 631. The amount that would have been otherwise owed to Defendant Christensen is not owed to him because of his defalcations, breaches of fiduciary duties and fraud upon the company.

Subject to recoupment based on said defalcation, the amount of $697.85 was placed in escrow with the Illinois Department of Labor on January 31, 2008.

See document bearing Bates label PB1084 produced herewith.

4

See electronic documents in corresponding file on disc labeled "PolyBrite
Responses to Defendants' Discovery Requests 6/13/08" produced herewith.

**Request No. 10.**    State the basis for the allegations in Paragraph 4 of the Complaint
that "This conspiracy was later joined by Christensen." State the date that Polybrite
is alleging, state all witnesses and the substance of their knowledge, provide all
documents which relate or serve a basis for this allegation.

**Answer:**

On a date known to Christensen, he entered into a course of conduct in which
he failed to accurately report to PolyBrite the status of its relationship with
Commercial Electric and Dillard's. Although a fiduciary of PolyBrite, he acted or
attempted to act as a conduit of Commercial Electric to hire or interview its officers
including Raymond Janik and Richard Brenner. Christensen, though resigned from
PolyBrite, traveled to Hong Kong and China with representatives of Commercial
Electric including Richard Brenner, Bob Van Aucken and Bill Young and met with CN
Wong, who, at that time, was still a vice-president of PolyBrite, therefore actively
conspiring with him and Defendant Brenner to breach CN Wong's fiduciary duties
and engage in fraud upon PolyBrite. At these meetings they discussed sensitive,
confidential and proprietary information to PolyBrite relating to its products and
customers.

See documents previously produced bearing Bates labels PB921 to 927, PB359
to 360, PB370 to 376, PB390 and Exhibits 21-24 to the Verified Complaint for
Injunctive and Other Relief.

See also document bearing Bates label PB1081 produced herewith.

5

**Request No. 11.**    State the basis for the allegation in paragraph 5 of the Complaint, as it relates to PC, that the "Defendants hid their actions by filing false reports with Polybrite." State all witnesses and the substance of their testimony, all supporting documents and e-mails, when these reports occurred and to whom they were addressed.

**Answer:**

Defendant Christensen led PolyBrite, through a series of emails, letters and contact reports, to believe nothing was of critical status in its relationship with Commercial Electric and Dillard's.  Christensen knew that the reasons stated by Philip Gamache in his letters dated November 9, 2007 and November 20, 2007 (Exhibits 18 and 20 to the Verified Complaint for Injunctive and Other Relief) were false and pretextual and never informed PolyBrite.  He knew Defendant Brenner went to work with Commercial Electric and failed to inform PolyBrite.

See documents previously produced bearing Bates labels PB359 to 360, PB921 to 927.

See electronic documents in corresponding file on disc labeled "PolyBrite Responses to Defendants' Discovery Requests 6/13/08" produced herewith.

See Exhibit 17 attached to the Verified Complaint for Injunctive and Other Relief.

See document bearing Bates label PB1081 produced herewith.

**Request No. 12.**    Relative to the formation of CDW Lighting Technologies ("CDW") and Wellstar Lighting LLC ("Wellstar Lighting"), state whether Polybrite contends that PC was involved with the formation of either company. If the answer is in the affirmative, provide all supporting documents, all witnesses and all information substantiating this contention.

6

**Answer:**

Plaintiff does not know if Paul Christensen was involved in the formation of

CDW Lighting Technologies Ltd. or Wellstar Lighting LLC.  Plaintiff is aware that

Christensen became aware of CDW's existence and participated in business

meetings at which CDW's wares were considered with Dick Brenner and CN Wong

who founded the company and were actively attempting to advance the company.

See documents previously produced bearing Bates labels PB359 to 360, PB375

to 376, Exhibits 21 to 24 to the Verified Complaint for Injunctive and Other Relief, and

the deposition transcripts of Defendants Brenner and Christensen.

**Request No. 13.**    Produce the organizational chart for Polybrite for 2006 or 2007, list
the name and address of each person, salary and all compensation for each of these
individuals.

**Answer:**

See documents bearing Bates labels PB1082 to 1083 produced herewith, a draft

organizational chart prepared by Defendant Brenner.  Plaintiff objects to the

remaining information requested as being confidential, irrelevant and not likely to

lead to any relevant information.

**Request No. 14.**    Relative to Commercial Electric LLC ("CE"), state whether
Polybrite is aware that CE had a prior working relationship with Nieman Marcus and
Dillard's, prior to April 19, 2007.  If the answer to the foregoing is in the affirmative,
state to the best of your knowledge, when CE's relationship with Dillard's began,
whether CE had sold lighting to Dillard's prior to April 19, 2007, the types of lighting
the CE sold to Dillard's prior to April 19, 2007, whether CE ever had an exclusive
distributor relationship with Polybrite, and whether CE in 2006 and 2007 was
permitted to sell Dillard's lamps, electronics and lighting needs other than those
manufactured or distributed by Polybrite.

**Answer:**

Plaintiff is aware that Commercial Electric had a working relationship with Neiman Marcus and Dillard's prior to April 19, 2007. Plaintiff is not aware of when Commercial Electric's relationship with Dillard's began. Plaintiff believes that Commercial Electric sold or installed non-LED lighting to Dillard's prior to April 19, 2007. The Distribution Agreement between plaintiff and Commercial Electric was not exclusive; however, it did contain a ten year post-termination non-competition clause.

**Request No. 15.** Relative to the allegation in the Complaint at paragraph 35 that "some of Polybrite's most important accounts, includ[ed] Macy's, Neiman Marcus, Dillard's, Autozone, Beck's and Walmart," state the basis for this allegation, state whether Polybrite ever sold these accounts in 2006 and 2007 and produce all supporting documents, including purchase orders, invoices, statements of account and any other documents which reflect or relate to these sales.

**Answer:**

Plaintiff sold consumer products to Walmart, made presentations to Neiman Marcus, had a verbal purchase order for lighting systems from Dillard's, and entered into a joint development agreement with Macy's. As retail chains, all of the delineated accounts are important accounts for volume purchase of PolyBrite products. Plaintiff objects to the remaining information requested as being confidential, irrelevant and not likely to lead to any relevant information.

**Request No. 16.** Prior to Polybrite's hiring of PC, to the best of your knowledge was PC an independent contractor and an outside, non-exclusive, sales representative for Polybrite and sold solid state LED products. Include all documents which reflect or relate to PC's activities with Polybrite prior to his hire as an employee.

8

**Answer:**

Prior to his hire as employee by PolyBrite, Defendant Christensen was a

commercial photographer engaged by PolyBrite as a commissioned, non-exclusive

sales representative for sales of PolyBrite signage lighting products.

See electronic documents in corresponding file on disc labeled "PolyBrite

Responses to Defendants' Discovery Requests 6/13/08" produced herewith.

**Request No. 17.**    Prior to November 14, 2007, is it not true the Carl Scianna
informed PC that he would no longer be handling the account, Florida Plastics.  If the
foregoing is in the affirmative, state the reason for the decision and all documents
relating to or reflecting such a decision.

**Answer:**

Carl Scianna removed Defendant Christensen from the Florida plastics

account.  Christensen was removed from the account because he never was assigned

to the account and improperly assumed an undefined role with this account.

**Request No. 18.**    Relative to the allegation in paragraph 77 of the Complaint, "On
information and belief the purpose [of PC's going to Polybrite on November 2, 2007]
was to surreptitiously remove Polybrite's files and product, which he had no right to
possess," state the basis for this allegation, all witnesses, whether Polybrite has any
knowledge that PC removed Polybrite's files and products and all documents relating
to or reflecting this allegation.

**Answer:**

There was no reason for Paul Christensen to go in and out of the building at

such frequent intervals.  In addition, he used an entrance, the loading dock, which he

had not previously used before.

Although Christensen received hard copies of documents and products, he

never returned anything upon his resignation from PolyBrite.

9

While employed by PolyBrite, Defendant Christensen was also given custody of a prototype display case linear lighting module which he has not yet returned.

See document previously produced bearing Bates label PB962 and Exhibit 19 as marked at the depositions previously taken.

**Request No. 19.**    Relative to the allegation in the Complaint at paragraph 59, "From the time that he took over the effort to obtain UL approval, Christensen represented, directly or by implication, that the UL approval process was going according to schedule and was not a critical issue in regard to Polybrite's relationship with Dillard's," state the basis for this allegation, provide a list of all witnesses and their testimony, provide all documents relating to this allegation, state whether Polybrite understood that PC had the expertise to obtain UL approval.

**Answer:**

Paul Christensen stated he would take over the UL process. Raymond Janik and Saima Litt believed Christensen was doing this and that he was following up. If he needed any assistance, Christensen should have said so.

The UL process takes months not weeks. It could not have been initiated until production models were finished. As late as October 24, 2007, Paul Christensen requested design modifications to the display case product for Commercial Electric and Dillard's. Commercial Electric was to supply drawings. As of October 24, 2007, there was no final production model to submit for UL approval because no drawings had been obtained from Commercial Electric, and Paul Christensen had requested additional changes.

Contrary to his position, sufficient monies would have been supplied to complete any modifications to the product, if Christensen would have gone through normal operating channels.

10

See documents previously produced bearing Bates labels PB159, PB921 to 927.

See document bearing Bates label PB1081 produced herewith.

See Exhibits 16, 18 and 20 as attached to the Verified Complaint.

See electronic documents in corresponding file on disc labeled "PolyBrite

Responses to Defendants' Discovery Requests 6/13/08" produced herewith.

**Request No. 20.**   Relative to the allegation in paragraph 63 of the Complaint, that "They [the stated reasons for CE's decision] were false and pretextual. They were known by both Brenner and Christensen to be false and pretextual.....," state the basis for this allegation, all witnesses relevant to this allegation and produce all documents supporting or relating to this allegation.

**Answer:**

See Plaintiff's Answer to Request No. 19 above.

Defendant Brenner also knew that changes had been requested as late as

October 24, 2007.  Those changes were dependent on drawings to be supplied by

Commercial Electric.

Defendants Brenner and Christensen had an intimate relationship.  Defendant

Christensen helped to arrange Defendant Brenner's employment with Commercial

Electric and Solid State Solutions.  This occurred at or around the time when PolyBrite

received the communications from Commercial Electric canceling its development

agreement with PolyBrite.

**Request No. 21.**   Provide copies of all manufacturing agreements by and between Wellstar Electronics and Polybrite and Vigor and Polybrite.

**Answer:**

There are no written manufacturing agreements with Wellstar and Vigor.

Plaintiff has introduced evidence and testimony that Defendant Brenner was

11

instructed to finalize documented agreements with Wellstar and Vigor, but failed to

do so.

**Request No. 22.**     Provide all sales records of all high brightness products from June of 2006 through November of 2007, including Westinghouse LED Lighting, W-LED, Westinghouse and Borealis Lighting branded products.

**Answer:**

Objection.  This request is not relevant nor is it calculated to lead to any

relevant information.  The request calls for proprietary and confidential information

that includes marketing, cost and pricing information.

**Request No. 23.**     Provide all invoices and payables for Polybrite to UL, Shape LLC, Citizen LED and Wellstar Electronics.

**Answer:**

Objection.  This request is not relevant nor is it calculated to lead to any

relevant information.

**Request No. 24.**     Provide all documents relating to the Westinghouse and Polybrite litigation.

**Answer:**

These documents will be made available for inspection and copying upon

reasonable notice at the law offices of Chuck Bretz and Associates, P.C., 58 North

Chicago Street, 2nd Floor, Joliet, Illinois 60432.

**Request No. 25.**     Provide all sales records from Polybrite for low power LED consumer goods and safety products, branded Polybrite for 2006 and 2007.

**Answer:**

Objection.  This request is not relevant nor is it calculated to lead to any

relevant information.

**Request No. 26.**    Provide all documents relating to the Illinois Department of Labor claim by PC against Polybrite.

**Answer:**

Objection. This request is an improper attempt at discovery in a federal case in a state claim. It is an abuse of discovery, moreover, defendant has copies of all documents filed by himself and plaintiff.

Respectfully submitted,

POLYBRITE INTERNATIONAL, INC.

By: _Mason N. Floyd_
One of Its Attorneys

William G. Sullivan
Mason N. Floyd
MARTIN, BROWN & SULLIVAN, LTD.
321 South Plymouth Court, 10th Floor
Chicago, Illinois 60604
(312) 360-5000

13

**CERTIFICATE OF SERVICE**

The undersigned, under penalties of perjury, hereby certifies that she caused

copies of the foregoing Plaintiff's Answers to Defendant Paul Christensen's First Set

of Discovery Requests to be served upon:

Mark J. Rose, Esq.
Law Offices of Mark J. Rose
200 West Adams Street
Suite 2850
Chicago, Illinois 60606
MJRoseEsq@aol.com

Sigi M. Offenbach, Esq.
Pitler & Mandell
39 South LaSalle Street
Suite 1220
Chicago, Illinois 60603
sigi@pitlerandmandell.com

by personal delivery this 13th day of June, 2008.

_Mary Menas_

C:\Documents and Settings\mary\My Documents\PolyBrite\Discovery\Ans to PC Dis Req.wpd

**VERIFICATION**

The undersigned certifies that he/she has read the statements set forth in this instrument and that they are true and correct to the best of his/her knowledge and belief, except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that he verily believes the same to be true.

Dated: June __12__, 2008

_____
Signature

_____
NED OTHMAN
(Print Name Here)

## PITLER and MANDELL
39 South LaSalle Street-Suite 1220
Chicago, Illinois 60603
Phone: (312) 782-9466
Fax: (312)782-3493
Philip L. Mandell
Sigi M. Offenbach

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| **ATTENTION:** | **William G. Sullivan and Mason N. Floyd** |
| **FIRM:** | **Martin, Brown and Sullivan** |
| **REFERENCE:** | **Polybrite v. Brenner et al.** |
| **FAX NUMBER:** | **360-5026** |
| **SENT BY:** | **Sigi M. Offenbach** |
| **DATE:** | **June 24, 2008** |
| **NUMBER OF PAGES:** | **3 (including cover page)** |

Call upon receipt: [ ] Yes  [ x ] No.   Hard copy will follow:  [ ] Yes  [ x ] No.

## ➤IMPORTANT COMMENTS

Gentlemen:

This communication is in accordance with F.R.C.P. 37(a)(1) and L.R. 37.2 of the Rules of the U.S. District Court for the Northern District of Illinois. Hopefully, we can discuss these matters in our conference scheduled for June 25, 2008.

Our behalf of our client, Paul Christensen, we join in the comments sent to you by Mr. Gekas on June 23, 2008.

In addition to the foregoing, we would add the following:

**Request No. 13** asks for the salary and compensation for all individuals on the Polybrite organization chart for 2006 and 2007. You have objected based on relevance and confidentiality.

Neither ground has merit. First of all, we intend to enter into a Protective Order which will obviate any objection as to confidentiality. Second of all, this request is material and relevant. Paragraph 35 of the Complaint, states in pertinent part, "Though not an officer of the corporation, Mr. Christensen was a high managerial agent of Polybrite. He was one of its highest paid employees." In order to prove the truth or falsity of this allegation, it is critical to know the complete organization of the corporation, each individual's responsibilities and reporting assignments, each person's salary

EXHIBIT

C

and other compensation.

**Request No. 15** asks for information concerning Macy's, Neiman Marcus, Dillard's, Autozone, Beck's and Walmart. It requests production of all purchase orders, invoices, statements of account and any other documents which reflect or relate to these sales. You have objected to this request as being confidential and irrelevant.

Again neither ground has merit. The Protective Order should resolve any objection as to confidentiality. Your allegation in paragraph 35 of the Complaint lists these accounts as Polybrite's most important accounts. There must be a documentary basis for this allegation and the parties must be able to test the truth or falsity of this allegation. If these accounts are most important accounts, there must be a significant documentary trail, including, but not limited to correspondence, contracts and agreements, purchase orders, invoices, statements of account, shipping documents, bills of lading, specifications, etc.

**Request No. 22** asks for sales records for all high brightness products for 2006 and 2007. You have objected to the request based on proprietary and confidential information and that the request is not relevant nor is it calculated to lead to any relevant information.

As previously stated, neither ground has any merit. The confidential nature of the information will be protected under the Protective Order. As for relevance, this information and documents are directly relevant to the allegations in the Complaint. Paragraph 1 of the Complaint states that the Defendants defrauded the Plaintiff out of millions of dollars. You have alleged that Polybrite has been damaged and continues to suffer damage as a result of the Defendants' actions. Those damages must relate to the gross sales of Polybrite and the diminution of sales before and after the alleged actions by the Defendants. The only method of determining this figure is a complete break down of the sales and the change of sales at Polybrite.

**Request No. 23** requests all invoices and payables for UL, Shape LLC, Citizen LED and Wellstar Electronics. You have objected to this request are being irrelevant.

We believe that your objection is completely groundless. First of all, you have alleged certain payments to Wellstar Electronics in paragraph 29 of the Complaint. The Defendants need to test the veracity of these allegations. Second of all, the affirmative defenses to this case relate to the non-payment and late payment of suppliers for the high brightness products for Polybrite. These affirmative defenses relate to the allegations in the Complaint concerning the culpability of the Defendants' actions. Clearly, if the Plaintiff's actions prevented the Defendants from carrying out their duties for the Plaintiff, the arguments concerning breaches of fiduciary duty hold little water. As the Plaintiff has exclusive control over these documents, it is absolutely essential that these documents be produced.

**Request No. 25** asks for the sales records of Polybrite for low power LED consumer goods and safety products. You have objected to this request based on relevance.

We would again contend that this objection is baseless. These documents are directly relevant to the

damage claim alleged by the Plaintiff. If there were any damage to the Plaintiff based on the Defendants' actions, the Defendants must be able to know the diminution in sales caused by their alleged actions. Furthermore, there must be information concerning the relative sales concerning the differing lines of products sold or marketed by Polybrite. Executives at Polybrite have testified concerning the two broad product lines sold by the company. As Mr. Christensen only worked in the high brightness area, he must have information concerning the breakdown of sales by different product lines as he is accused on damaging the company and his actions would have no relation to the sales of the low brightness products.

We would hope to have these documents and answers by the end of next week.

Sigi M. Offenbach

**** CONFIDENTIALITY NOTICE ****

The information contained in this facsimile message is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

cc:    C. Gekas (726-4505)
       Mark Rose (704-8233)

**Sigi**

| | |
|---|---|
| **From:** | William Sullivan [sullivan@mbslaw.com] |
| **Sent:** | Wednesday, July 30, 2008 2:02 PM |
| **To:** | Sigi |
| **Cc:** | Mason Floyd |
| **Subject:** | Polybrite v. Brenner, et al. |

Sigi,

As I informed you today, I will not agree to a waiver of the rule
limiting the number of interrogatories that can be issued.  I have had
an opportunity to confer with my client about your requests for
financial information about the company.  My client's position remains
the same:  that which you seek is not relevant, nor calculated to lead
to relevant information.  In addition, it requires the production of
highly sensitive, non public information.

Bill Sullivan



EXHIBIT
D